THOMAS GRAHAM, Respondent, v. J. G. BRANDT SHOE COMPANY, Appellant.

St. Louis Court of Appeals, May 7, 1912.

1. NEGLIGENCE: Injury to Servant of Independent Contractor: Liability of Owner of Premises. The servant of a plumbing contractor, who was engaged in installing water pipes in the elevator shaft of a building, under a contract between the owner and the contractor, was rightfully on the premises as an invitee, and the law cast the duty upon the owner to exercise ordinary care for his safety while engaged in the execution of his task.

2. ——: ——: ——: **Master and Servant: Respondeat Su-
perior.** Where plaintiff, the servant of a plumbing contractor,
while installing a water pipe in defendant's building, under
a contract between defendant and the contractor, was injured
through the operation of the elevator, by the negligence of the
elevator boy, his right to recover depended on the doctrine of
*respondeat superior*, and the burden rested on him to show that
the elevator boy, at the time of the accident, was acting about
defendant's business and within the scope of his authority.

3. ——: ——: ——: ——: ——: **Instructions.** Plain-
tiff, the servant of a plumbing contractor, was engaged in
installing water pipes in the elevator shaft of defendant's
building, under a contract between defendant and the con-
tractor. There was evidence that, on the commencement of the
work, defendant instructed the elevator boy that the elevator
should not be moved during the day. There was other evi-
dence that plaintiff thereafter assumed control of the elevator
boy and directed him to operate the elevator between the
second and the sixth floors, and that while plaintiff's helper
forbade the boy to move the elevator at the time plaintiff
was injured, he nevertheless did so while plaintiff's head was
directly underneath the counterweights, causing plaintiff's in-
jury by the descent of such weights. *Held,* that the court
erred in refusing to charge the jury that plaintiff could not
recover unless the servant was subject to defendant's orders at
the time of the commission of the negligent act, and if plain-
tiff, at that time, had assumed to direct and control the boy and
did direct him, defendant was not liable for his negligence,
notwithstanding he failed to heed the injunction of plaintiff's
helper, since plaintiff's right to recover depended on the doc-
trine of *respondeat superior.*

Appeal from St. Louis City Circuit Court.—*Hon.
George H. Williams,* Judge.

REVERSED AND REMANDED.

*W. Scott Hancock* and *W. Hall Trigg* for appel-
lant.

(1) The rule of *respondeat superior* may not be
invoked by one who knowingly causes a servant to act
contrary to his master's express instructions. Snider
v. Crawford, 47 Mo. App. 8. Where a servant, while
in the general employ of his master, but without the

latter's knowledge and consent, acts at the request, and under the direction of, a third person in a venture of a hazardous nature, and apart from his delegated duties, he does not therein represent the master. Hall, Headington & Co. v. Poile, 94 Md. 171; Atherton v. Coal & Coke Co., 106 Mo. App. 591. (2) Where the facts hypothecated in an instruction indubitably constitute contributory negligence—if found to be true—the instruction is not faulty in omitting the word "negligently." Such an instruction properly tells the jury that, if they find from the evidence the existence of certain facts, those facts constitute negligence; and, to submit to the jury the question as to whether or not such indubitable facts amounted to negligence or not, would be opposed alike to reason and to law. Luckel v. Building Co., 177 Mo. 608; Bond v. Railroad, 122 Mo. App. 207; McCaffery v. Railroad, 192 Mo. 114. (3) Where it conclusively appears that the injured person knowing and voluntarily placed himself in a position of risk and danger, when he might have more easily occupied one of entire safety, he is guilty of contributory negligence. Huelsenkamp v. Railroad, 34 Mo. 45; O'Donnell v. Patton, 117 Mo. 13.

*A. R.* and *Howard Taylor* for respondent.

The rule that contributory negligence must be pleaded specifically is *pari materia* with the rule that negligence must be pleaded specifically—and when so pleaded the pleader is held to the specific negligence or contributory negigence alleged. In the case of instruction (D) as said above, there is not a suggestion in the answer of the subject matter contained in that instruction. Instructions submitting issues not raised by the pleadings are properly refused. Kirkpatrick v. Railroad, 211 Mo. 68; Kellogg v. Kirksville, 132 Mo. App. 519; Smith v. Railroad, 126 Mo. App. 120; Bond v. Sandford, 134 Mo. App. 477.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of personal injuries received through the alleged negligence of defendant. Plaintiff recovered and defendant prosecutes the appeal.

Defendant, an incorporated mercantile company, at the time of the injury complained of occupied the building numbered 616 Washington avenue, St. Louis. This building consists of six stories, the first and second of which alone defendant occupied, while the stories above were in possession of other tenants. The premises were equipped with an elevator, which was operated by defendant and used by all the tenants, for it communicated with each of the six stories of the building. Plaintiff is a plumber by trade, and at the time of his injury, together with Kraft, his helper, was in the employ of the Tumalty Plumbing Co., which had a contract with defendant for the installation of certain water pipes in the elevator shaft on the premises. It appears the elevator shaft was constructed with a double partition wall, and it was between these two walls that plaintiff was engaged in installing pipe at the time of his injury, though he stood on the bottom of the shaft proper and projected his head and arms within the space between the partition walls. While in this position, the elevator proceeded to the sixth floor, and one of the counterweights attached thereto, operating between the partition walls, descended upon plaintiff's head and inflicted severe and permanent injuries. The elevator shaft extended about three feet below the first or ground floor of the building. Into this and between the partition walls therein an inch and a quarter water pipe was extended from the basement with the purpose to connect it by means of an elbow with another pipe of like size there standing perpendicularly. The elbow with threads therein was properly annexed to the pipe which entered horizontally from the basement between the partition walls, and plaintiff and his helper were engaged in the act of

threading the perpendicular pipe, fourteen feet long, into this elbow when the counterweight of the elevator unexpectedly descended upon him. Between the same partition walls in which the water pipe was being installed, and near the center of the shaft from east to west, two guide rails, standing perpendicularly, were in position, about two and one-half feet apart. The counterweights of the elevator operated between these two guide rails. As the elevator proceeded to the upper story the counterweights descended to the basement and *vice versa*. It is said these counterweights were of cast iron, about four feet in length, two and one-half feet in width, and very heavy. While the elevator was standing still at the second floor, plaintiff and his helper commenced the task of joining the upright or perpendicular inch and a quarter pipe into the elbow annexed to the horizontal pipe which entered from the basement between the partition walls of the elevator. To accomplish this purpose, plaintiff took his position upon the bottom of the elevator shaft and protruded his head and arms through an aperture into the space between the partition walls and between the guide rails and underneath the counterweights. Plaintiff was engaged at the time in holding the elbow on the horizontal pipe with a wrench in his hand and threading the perpendicular pipe therein while his helper stood immediately above him, with one foot on the floor of the building, at the threshold of the elevator shaft, and the other upon a projection within the shaft. Thus standing, the helper, Kraft, was engaged in holding the perpendicular pipe steady, while plaintiff was immediately beneath him and between his legs, with his head and arms inside of the partition and under the counterweights. While the workmen thus stood, the elevator boy at the second floor hallooed that he was going up and to look out below, and Kraft, plaintiff's helper, immediately forbade him to do so. Notwithstanding the command of Kraft to the contrary, within two or

three minutes thereafter the elevator boy ran the cage to the sixth floor of the building and, of course, the counterweight came down upon plaintiff's head.

For plaintiff the evidence tends to prove that defendant gave "strict orders" to the elevator boy when the work commenced about 8:00 o'clock in the morning that the elevator should not be moved by him during the day, for the reason plaintiff and his helper would be engaged in the shaft throughout the time. Under these strict orders from defendant, the elevator was to remain standing at the second floor, where, according to plaintiff's evidence, it was when he entered upon the task which resulted in injury through the descent of the counterweight upon him. According to plaintiff and his witness, Kraft, the elevator had stood stationary at the second floor from the time they commenced work in the morning until the movement which resulted in plaintiff's injury at about 2:30 in the afternoon, unless it was during the lunch hour when plaintiff and Kraft were not present.

For defendant, the evidence tends to prove that, though such an order were given at eight o'clock in the morning, plaintiff thereafter assumed charge of the situation and directed the elevator boy to operate the cage between the second and sixth floors of the building. Besides the direct testimony of the elevator boy to the effect that plaintiff instructed him to operate the elevator between the second and sixth floors, numerous employees of the various tenants testified that such course was pursued throughout the day, for they had passed up and down thereon between the second and sixth floors. There can be no doubt that plaintiff, a servant in the employ of a contractor engaged in the task of installing the water pipes, was rightfully upon the premises as an invitee. This being true, no one can doubt that the law cast upon defendant the obligation to exercise ordinary care for plaintiff's safety from injury by the elevator and counterweights while

engaged in the shaft about the execution of the task assigned him. To this end, it is said strict orders were given by defendant that the elevator should not be moved from the second floor during the day, and the breach assigned is, that defendant was derelict in respect of this duty, through the negligent omission of its servant, the elevator boy, to heed the charge. Of course, the liability for the hurt asserted here rests upon the principle of *respondeat superior,* for the purpose is to enforce compensation from defendant because of the negligent act of its servant. No one can doubt that, to attain this result, it must appear defendant's servant, the elevator boy, was at the time acting for defendant about the master's business and within the scope of his authority, for otherwise the tort is not that of the master.

There is an abundance of evidence on behalf of plaintiff tending to prove the elevator boy was acting for the master about his business and within the scope of his authority at the time of the injury and that he violated the express instructions of the master, or "the strict orders," in moving the elevator from the second to the sixth floor; but though such be true, there is an abundance of evidence as well, on the part of defendant, tending to prove that the elevator boy was induced to operate the elevator between the second and sixth floors by plaintiff himself. In other words, there is direct and positive evidence to the effect that whatever the instructions were in the early portion of the day, plaintiff thereafter assumed command of defendant's servant, the elevator boy, and directed him to run the elevator between the second and sixth floors as he did at the time plaintiff was injured.

For the purpose of enlightening the jury with respect to its duty, if it believed this evidence to be true, defendant requested the following instruction but the court refused it: "The court instructs you that, in order to render a master liable for the negligence of

a servant, the servant must have been acting within the scope of his employment, and must have been subject to his master's orders and control at the time of the commission of the negligent act complained of; therefore, if you believe from the evidence that the elevator boy (defendant's servant), at the time of the accident in question, was not, in fact, acting under directions of defendant or defendant's architect, but had, without their knowledge and consent, placed himself under plaintiff's control, and that plaintiff assumed to direct, and did direct, him, then for any negligence on the part of the elevator boy, in failing properly to follow the directions given him by the plaintiff, the defendant is not liable, and your verdict will be for defendant.'' Obviously the court erred in refusing this instruction for, if, as asserted by defendant, plaintiff came to his injury through the negligent act of the elevator boy in following the instructions given by plaintiff, contrary to and superseding those given by defendant, the principle *respondeat superior* does not obtain in the case; for, in such circumstances, where the alleged recreant servant has been induced by the injured party to depart from the instructions given by the master and follow those of another in lieu thereof, the precepts of natural justice alone forbid such injured party to assert that such servant was acting within the scope of the authority of the master at the time. If, as the evidence for defendant tends to prove, the elevator boy departed from the course marked out for him by express instructions from the master and obeyed instead those of plaintiff, to the effect that he should run the elevator between the second and sixth floors of the building, then defendant is without fault in the premises. On this hypothesis of fact, it is obvious the act of the elevator boy in moving the elevator upward at the time, notwithstanding the command of Kraft not to do so when the boy hallooed to the workmen below, may not be imputed to defendant as a

breach of duty through its servant. If defendant's evidence be true, it is manifest that at this time the elevator boy was operating between the second and sixth floors under the command of plaintiff, in direct disobedience to his master's orders, and if he omitted to exercise care thereabout or to heed the injunction of Kraft not to move the cage for the time being, such omission of duty is to be charged to plaintiff himself, who had assumed command, and not to defendant, who had directed another course. For an authority directly in point, see Snider v. Crawford, 47 Mo. App. 8. For others, declaring a like limitation on the rule of *respondeat superior,* see Atherton v. Kansas City, etc. Coal Co., 106 Mo. App. 591, 81 S. W. 223; Hall, Headington & Co. v. Poole, 94 Md. 171.

Plaintiff's first and third instructions are erroneous in that they omit to reckon with the feature of the case disclosed by defendant's evidence above discussed. These instructions, after hypothesizing the facts revealed in plaintiff's evidence authorize a recovery for plaintiff, provided he was exercising due care on his part, upon a mere finding that the elevator boy was defendant's servant. Upon another trial, these instructions should be redrafted along the lines indicated therein at present, authorizing a recovery for plaintiff unless at the time of the injury the elevator boy is found to have departed from the master's instructions and to have been pursuing, instead, the course marked out to him by plaintiff.

It will be unnecessary to consider further arguments advanced for a reversal of the judgment, and for that reason we decline to notice them. The judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.