ELIZA FELLHAUER, Administratrix, Respondent, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, May 24, 1915.

1. **NEGLIGENCE: Master and Servant: Scope of Employment.** A shipper told the station agent the freight car he was to use in shipping his household goods was not in a convenient place. The agent said to see the engine hostler and get him to place the car where he desired. The hostler told his helper to take a freight engine standing in the yard and "spot" the car. He did so first in front of the shipper's house and afterward on a storage track in front of the shipper's shop. This track was never used for loading cars. After the hostler's helper had spotted the car on the storage track and the shipper began loading his goods, the hostler helper uncoupled the engine and went about his regular duties coaling and caring for the engine. He then stored it, as was his duty, on the track, and in doing so struck the car and injured the shipper who was loading his goods. Held, that even if the spotting of the car was outside the scope of the hostler helper's duties and in violation of his master's orders, yet when he did the injury he was clearly acting for his master and in the line of his duty, and knowing or having reason to believe the shipper was in the car he had no right to negligently injure him, and if he did so his master was liable.

2. ——————: ——————: ——————: Contributory Negligence. Since it was not conclusively shown that the shipper knew it was in violation of the master's rules to place the car where it was, and since the shipper knew the servant was aware of his presence in the·car, he had a right to assume that the servant would not negligently strike the car with his engine and injure him. Hence the shipper was not guilty of contributory negligence in not keeping a watch outside the car for the engine or in attempting to load the car at that point.

Appeal form Grundy Circuit Court.—*Hon. G. W. Wanamaker*, Judge.

AFFIRMED.

*J. G. Trimble, Hall & Hall* for appellant.

*O. G. ·Williams* and *Hubbell Bros.* for respondent.

TRIMBLE, J.—Originally, this was a suit by Ferdinand Fellhauer for damages claimed to have been received as the result of the alleged negligent striking and consequent sudden movement of a box car in which he was arranging articles of personal property for shipment over defendant's road. He claimed he was standing on a box in the car when it was suddenly and without warning struck and moved a short distance by a local engine whereby he was thrown to the floor and severely injured. Before his case came to trial, Fellhauer died suddenly of apoplexy; and the cause was revived in the name of his administratrix, it being alleged in the amended petition that the injuries he is said to have received did not cause his death. A trial was had upon said amended petition and a verdict was rendered in plaintiff's favor. Thereupon defendant appealed.

The alleged injury occurred at the defendant's station in the town of Osborn, Missouri, where Fellhauer· and his son Frank lived and conducted a blacksmith shop. They desired to move to the town of

Coffey, also on defendant's line, and applied for a freight car in which to ship their household goods and blacksmith tools. The agent told them he would have a car there for them in a few days.

The station at Osborn is one used jointly by the defendant and the Chicago, Burlington & Quincy railroad. These two lines are parallel and run east and west at this point. The Burlington runs south of the depot and the defendant's railroad runs north of it. The house or team track, on which cars stood when loaded or unloaded, was a track which left the main line of the Burlington at a switch east of the depot, curved to the north as it went west until it connected with the main line of the defendant at a point just north of the depot, and then, passing the depot, it curved south again and joined the Burlington at a switch west of the depot. Defendant had two sidetracks north of its main line known as storage tracks number one and number two, the latter lying north of the former. They connected with defendant's main line at a switch east of the depot and, after running parallel with the main line past the depot, again joined the main line at a switch some distance west of the depot. A short stub, known as the coal track, left storage track number one near the east end thereof and ran west for a short distance and stopped between the main track and said storage track number one. The Fellhauers' residence was a short distance north and a little west of the west switch where the two storage tracks merged into one and joined the main line west of the depot. Their blacksmith shop was a short distance north and slightly west of the point where the sidetrack left the main line at the switch east of the depot and divided into said storage tracks number one and number two.

When the car intended for the Fellhauers' use came, it was placed on the house track a short distance west of the depot. At this place it was between the

main lines of the two railroads. It seems that the dray team the Fellhauers were going to use was wild and afraid of trains, and when the location of the car was ascertained, Frank Fellhauer went to Deems, the station agent, and told him he couldn't get to the car where it was setting. Deems told him to get Booth, the engine hostler, to set the car where it would be convenient. (Osborn was a division point, and freight engines were tied up there and placed in the hostler's care whose duty it was to clean them, keep them properly coaled, and with fire up, ready to go out whenever the train crew came to take out a train.) Thereupon, Frank Fellhauer went to Booth, the hostler, and he said he would have his helper, Roy Kirchner, who was a boy about sixteen or seventeen years of age, to do it. Frank Fellhauer went to look for Kirchner and finally Kirchner came in and said Booth had already told him to spot the car wherever the Fellhauers needed it.

Kirchner took the freight engine tied up at that station and moved the car to a point on the main line just west of the west switch and opposite the Fellhauers' residence. And here the Fellhauers carried their household goods down and put them into the car without the use of the dray. After the household goods were loaded, Kirchner then moved the car to a point on, and near the east end of, storage track number two, opposite the blacksmith shop. Then the tools and blacksmith outfit were hauled by the dray from the shop and loaded into the car. After setting the car at this spot, Kirchner uncoupled the engine and took it over on storage track number one where he supplied it with coal and then ran it back on to track number two the proper storage place for it when it was cleaned and coaled ready for the crew to take it out on the road. In order for him to get the engine far enough on track two to allow cars to pass onto track one, it was necessary to place the Fellhauer car further west and the boy pushed it back with the engine. In doing so,

he struck the car hard enough to move it twenty-five or thirty feet slightly up grade notwithstanding it was "chocked" at both ends by pieces of railroad ties placed under the wheels.    Ferdinand Fellhauer as stated, was in the car and was thrown down and injured by the impact of the engine against the car.

It is very earnestly and strenuously contended that plaintiff is not entitled to recover and that the instructions in the nature of demurrers to the evidence should have been given.    Defendant's view is that the train crews were the only employees whose duty it was to "spot" cars, that is, to place them at any particular place for loading or unloading; that tracks one and two were used only as storage tracks where cars were set by the train crews to be taken out whenever the proper train left; that cars were never loaded or unloaded on these tracks but, when placed there, they were ready to go out whether loaded or empty; that no one but the train crews had any authority to do any switching or moving of cars from place to place at the station, and that neither the hostler nor his assistant called the hostler helper, had authority to switch cars, but their duties were solely to care for, clean and coal the engines tied up there and, when in proper trim and ready to go out, to store the engines on said storage track two; that Deems, the agent, had no power to authorize the spotting of cars anywhere except on the house or team track, and that the Fellhauers, in getting the car spotted on the main line in front of their residence and afterwards on storage track two in front of the blacksmith shop, were having Kirchner, the boy, to do something outside of the scope of his duties and in violation of the master's rules; and that as the alleged injury occurred as a result thereof, there was no liability on the part of the master.

It is by no means certain that there is not sufficient evidence from which the jury could find that the

hostler helper was acting within the scope of his duties in spotting the car in front of the residence and afterwards in front of the shop. The agent testified that it was usual and customary for the railroad company to spot a car and set it at a place where the shipper could conveniently load it. Of course this doubtless should be interpreted to mean that the car would be put at any convenient place on the house track, the one set apart for that purpose, and not at any point about the station yards or on the main line outside. But the agent said it was his duty to see that the car was set at some proper place for it to be loaded; and Frank Fellhauer said the agent told him to get Booth, the hostler, to put the car where it would be convenient and that he saw Booth and he said he would have Kirchner, the hostler helper, to do it. Booth does not deny this. Kirchner afterwards told Fellhauer, Booth had directed him to spot the car wherever they needed it, and testified that he used the engine and moved the car at Booth's request. There was evidence that Booth was foreman over the engines tied up at that station and boss over the men who helped him; that ordinarily if there were cars to be coupled, or cars to be spotted, Booth would do it if he was there or he would leave orders to the men who helped him to spot them, and that Kirchner had piloted the engine a number of times and "handled it quite a bit." So that, taking the evidence in its most favorable light for the plaintiff, as we must do in view of the verdict, it shows that Deems had authority to have cars spotted, that he authorized Booth to spot the car where convenient for the Fellhauers, and that Booth had his helper to do it. The most that can be said in defendant's behalf concerning this view of the testimony is that the defendant's servants, in spotting the car, put it at a place other than on the track used for that purpose. But does this fact put the act outside the scope of their employment in the sense the law uses that phrase in

fixing the liability of a master? If spotting a car was one of the duties of the servant, then the fact that he spotted it at a place other than where they were ordinarily spotted would not relieve the master of liability. [20 Am. & Eng. Ency. of Law (2 Ed.), pp. 163, 164, 167, 170.] If the spotting of cars was one of the duties intrusted to a servant, then his master is not relieved of liability merely because the servant spotted the car at a different place from that ordinarily provided for that purpose. [Compher v. Telephone Co., 127 Mo. App. 553, l. c. 557; Shamp v. Lambert, 142 Mo. App. 567, l. c. 575; Garretzen v. Duenckel, 50 Mo. 104.] Whether the particular act of the servant was committed within the scope of his employment is often a difficult question, and is frequently one of fact to be determined by the jury under all the facts and circumstances. It cannot be determined by any fixed rule but is rather to be ascertained from the nature of the act, its purpose and all the facts connected therewith. If the act is necesary to accomplish the object of the employment or is intended for that purpose, then it may be within the scope of the employment, though, in the method of performing the act, the servant may have violated instructions or orders. [26 Cyc. 1531, 1533-4-5; Chandler v. Gloyd, 217 Mo. 394, l. c. 412; Payne v. Mo. Pacific Ry., 105 Mo. App. 155; 1 Sherman & Redf. on Neg. (6 Ed.), sec. 145.] Defendant, however, says that Fellhauer paid the boy Kirchner $1 for spotting the car and hence the boy was not acting as the servant of the defendant but was the servant of the Fellhauers in spotting the car and was induced by them to do so in a way violative of the master's orders. Fellhauer says he paid the boy the $1 for helping to carry some of the household goods to the car. There is some evidence tending to show that Kirchner, the boy, knew it was not proper to place the car on the main line or to use the engine in moving the car, but none that the Fellhauers knew it. If Kirchner

was acting within the scope of his employment in moving the car, then it cannot be said, as matter of law, that he was conclusively transformed into the agent of the Fellhauers to do a thing in violation of the defendant's orders, or that the Felhauers knew it was such violation, merely because they paid him the money. The questions whether Kirchner was acting within the scope of his employment as a servant of defendant, or whether he was acting as an agent for the Fellhauers in moving the car and whether they knowingly induced him to violate the rules of the company or do something outside of his duties, were submitted to the jury ,and their verdict was in plaintiff's favor. Of course, if the act of Kirchner was one outside the scope of his employment, or was done as the agent of the Fellhauers, in violation of the defendant's orders, and that act resulted in the injury, defendant ought not to be held liable. [Snider v. Crawford, 47 Mo. App. 8; Graham v. Brandt Shoe Co., 165 Mo. App. 361, 1. c. 369; Adams v. Cost, 62 Md. 264; Wood on Master & Servant, sec. 279; Cousins v. Hannibal & St. Joseph R. Co., 66 Mo. 572.]

But the liability of defendant in this case rests on more than the mere question whether the spotting of the car by Kirchner was within the scope of his employment or whether in doing so he was acting for and in behalf of the Fellhauers. In our opinion, the questions whether Kirchner had authority to spot the car and for whom he was acting is, in a sense, remote and has little to do with the case. Because the injury did not occur in connection with the spotting of the car, nor as a part of Kirchner's work in so doing, even if, in spotting the car, he acted as agent of the Fellhauers and not of the defendant. It is unquestionably true that it was within the scope of his duties as hostler helper to coal the engine and place it on storage track number two. In doing that, he was undoubtedly in the line of his employment and engaged in his master's

business. Now, if it be conceded that he spotted the car as agent of the Fellhauers, nevertheless he had ceased the performance of that work when he placed the car on storage track number two and uncoupled his engine therefrom and left the car setting there. If he had been working for the Fellhauers up to that point, his work was done. Nothing remained to be accomplished by the Fellhauers except to finish loading the car, and then it would be taken, as it afterwards was, by the train to its destination. When, therefor, Kirchner took the engine from the car and went from track two to track one alongside the coal track for the purpose of coaling, he had entered upon what was clearly his duties to the company. And when, after coaling and cleaning the engine, he took it back to track two for the purpose of storing it there for use when needed by the train crew, he was acting exclusively for the company and not for the Fellhauers. When he left the car they were commencing to load the machinery and tools into it. He took the engine to an adjoining track and coaled it. Although he was occupied in this about an hour and a half, yet he knew the Fellhauers were at work loading the car and saw them there about thirty minutes before he took the engine back. He had no reason to think they were not there. He made no examination to see whether they were or not. He could not see whether the door on the north side (next to the shop) was open or not. In order to leave the engine on track two so as not to obstruct the passage of incoming engines or cars on track number one, it was necessary to push the car further west and Kirchner thereupon did so with the engine. In doing so he struck it at least hard enough to move it possibly thirty feet slightly up grade and in spite of the pieces of tie placed under the wheels at end end to chock it. He had no right to assume no one was in the car. The Fellhauers were there a short while before and he had

no reason to believe they were not still there. There was evidence that the engine came back with unusual speed, that no signal nor warning of its approach was given, the car did not couple and no effort made to see whether anyone was in the car at the time. It would seem that this is sufficient to support a verdict that the act causing the injury was done while in the scope of the master's employment and that it was negligence to do it in this manner. Kirchner had left the work of spotting the car, if that was not in his line, and had entered upon his master's work when he struck the car. [Vanneman v. Walker Laundry Co., 166 Mo. App. 685, l. c. 692; Whimster v. Holmes, 177 Mo. App. 130.]

Fellhauer was engaged in loading the car at a place where it had been placed by the railroad employees. There is no conclusive showing that Fellhauer knew the car was not rightfully upon track number two, but even if it had been placed there by himself with no authority from anyone, yet this would not authorize an employee, who knew it was there and had reason to believe the shipper was in it, to carelessly strike the car and injure the person therein. Fellhauer was rightfully loading or arranging his goods in the car, and if the car was not rightfully in the particular place it should have been for loading, yet this makes no difference since Kirchner knew it was there for that purpose and that the shipper was likely in it. The operator of the engine therefore owed him the duty of exercising ordinary care and was negligent in failing to do so. [23 Am. & Eng. Ency. of Law (2 Ed.), 739; Butler v. Chicago, etc. R. Co., 155 Mo. App. 287; Dooley v. Missouri, etc. R. Co., 110 S. W. 135; 3 Elliott on Railroads, 1265c; 2 Thompson on Neg., sec. 1841.] Suppose Fellhauer himself had, without any authority whatever, moved the car to this spot by means of the pinch bar, the hostler helper, knowing the car was there and that Fellhauer was likely to be in or about it, could not recklessly strike the car and

injure him without creating a liability on the part of the master whose work he was then doing. The negligent act was not done in obedience to anything required of the boy, Kirchner, by the Fellhauers. This fact differentiates the case at bar from Snider v. Crawford, 47 Mo. App. 8, Graham v. Brandt Shoe Co., 165 Mo. App. 361, Adams v. Cost, 62 Mo. 264, and other cases cited by defendant. In them the injury was caused in performing the act plaintiff had induced the employee to do outside of his duties or in violation of them. But such is not the case here.

Nor can it be said as matter of law that, since the car was in a place not set apart by the company for loading, Fellhauer was guilty of contributory negligence in not watching out for the impact of the engine. It is not conclusively shown that he knew the car was there without authority or that he was a trespasser by being in that particular spot. Besides his presence was known to the employee using the engine. Fellhauer knew that his presence was known and he had no reason to anticipate that Kirchner would run the engine against the car when he himself had put the car there and knew it was to be loaded at that particular place. Of course if Fellhauer had, without authority, been in the car at that place and had been injured by an employee who did not know or have any reason to think he was there, then he would have been negligent in not looking out for his own safety, or rather there would have been no negligence shown against the one injuring him. But the car having been placed there by the employee, Fellhauer had a right to assume that that particular employee at least would not negligently or recklessly injure him. If that employee knew he was likely to be there he could not negligently strike the car without rendering his master liable. [Judge v. Pullman Co., 209 Fed. 10.] The court did not err in overruling the demurrers to plaintiff's evidence or in refusing defendant's instructions two and

three since, as we have said, the injury was not occasioned while Kirchner was doing any act for Fellhauers, but while he was in the performance of his duties to the defendant.

During the examination of Dr. Wright who was consulted by the elder Fellhauer concerning his injury, he was asked in what condition he found Mr. Fellhauer with respect to his arms and shoulders. The doctor said Fellhauer came to see him in reference to pain and soreness and inability to use his arm; that he had at that time limited motion and a good deal of soreness in and around the shoulder joint and thickening and stiffness in the wrist joint and a good deal of it, and that the inability to use the wrist showed the effect of injury to the back of his hand and in the muscles and ligaments of the shoulder joint. In the course of the doctor's statement as to these things he remarked that the patient said he couldn't use his arm, that, "as I understood it and remember it he was hanging up something in the car—well, he was standing on a box and was thrown from the box." Then, after he testified as to the soreness and stiffness, thickening, etc., the defendant's counsel moved to strike out of the answer of the witness "those things that Mr. Fellhauer told him" as hearsay. The court thereupon inquired of the witness if the conditions he had testified to were obtained in connection with the examination and when the doctor answered in the affirmative, the motion to strike out was overruled. We do not understand the witness to say that Mr. Fellhauer told him of the past soreness, stiffness, thickening, etc., of his arm and shoulder, but that the witness himself stated such conditions were present and existing at the time of his examinations, which were three in number. The patient's complaint of present pain, soreness, and inability to use the arm at the time of the examinations and in the course thereof, were not objectionable. [McHugh v. St. Louis Transit Co., 190 Mo. 85, l. c.

95; Holloway v. Kansas City, 184 Mo. 19, l. c. 38, 39.] It is true the doctor in the course of his testimony said the patient told him he was "hanging up something in the car"—"was standing on a box and was thrown from the box" but Fellhauer's deposition was read to the jury and in it he stated that was what he was doing, and no one contradicts this fact. It was not a contested point in the case. The statement of the doctor as to this was hearsay and could have been properly stricken out, but we are unable to see wherein the evidence was prejudicial. The question asked of the doctor was "in what condition did you find Mr. Fellhauer with respect to his arms and shoulders?" During the course of his answer he made the above statements. They were not in response to the question asked and did not supply any proof that was lacking nor did they refer to anything about which there was any contradictory evidence. It is not seen how they could have any effect whatever on the verdict. They could in no way "materially affect the merits of the action," and if not, then under section 2082, Revised Statutes 1909, we should not reverse and remand the case on this account. If defendant was not injured by it, its admission will not justify a reversal. [Holmes v. Goldsmith, 147 U. S. 150.]

The judgment is affirmed. The other judges concur.