S. P. BEITLING AND LIBERTY MUTUAL INS. CO., RESPONDENTS, v. S. S. KRESGE COMPANY, APPELLANT.—116 S. W. (2d) 522.

Kansas City Court of Appeals. March 7, 1938.

1196

*Mosman, Rogers, Bell & Buzard, Joe Levin, Harold Waxman* and *Chas. N. Sadler* for respondents.

*Henry L. Jost* and *Roger C. Slaughter* for appellant.

CAMPBELL, C.—Action to recover damages for personal injuries suffered by plaintiff, Beitling, through the alleged negligence of the defendants.

The trial was to a jury. The plaintiffs had a verdict and judgment in the sum of $5000. The defendants have appealed.

The petition alleged that defendant, S. S. Kresge Company, owned and operated retail stores, one of which was located at 1117 Main Street in Kansas City, Missouri, and in which it maintained and operated elevators, "especially a freight elevator having a balance weight which moves in the opposite direction to which said elevator is moving and remains stationary when the elevator is standing"; that defendant, Hicklin, was the employe of his codefendant and as such was the operator of said freight elevator; that plaintiff, Beitling, as the employe of Independent Electric Machinery Company was, on October 7, 1936, engaged in installing a conduit in the shaft of

the freight elevator extending from the fifth floor of the store building located at 1117 Main Street to the basement therein, to be used in carrying electric wires; that Hicklin opened and left open the door of the elevator shaft an the fifth floor, for the purpose of allowing Beitling to work in the shaft while installing the conduit, and then lowered the elevator to about the first floor where it came to rest; that while Beitling was working in the shaft defendants carelessly caused or allowed the freight elevator to move upward, thus causing the balance weight to strike and injure his left foot and toes. And—

"That said defendants and each of them were guilty of negligence in the following particulars, to-wit:

"1. In starting said elevator in motion when defendant, Theodore Hicklin, an agent and servant of defendant S. S. Kresge Company acting within the scope of his authority and employment, knew that plaintiff S. P. Beitling was installing a conduit in said elevator shaft, and knew or by the exercise of ordinary care could have known there was danger of injuring him if said elevator was moved while he was in such position.

"2. In starting said elevator in motion by said defendant Theodore Hicklin, an agent and servant of defendant S. S. Kresge Company acting within the scope of his authority and employment, after leaving the door of said elevator shaft open at the fifth floor for the purpose of permitting said plaintiff S. P. Beitling to install said conduit in said shaft, without ascertaining whether said plaintiff S. P. Beitling was in a position of peril of being injured if said elevator was moved, and in continuing to move said elevator without ascertaining whether such action would cause injury to said plaintiff, when he could by the exercise of ordinary care have ascertained such fact.

"3. In starting said elevator in motion by said defendant Theodore Hicklin an agent and servant of said defendant S. S. Kresge Company acting within the scope of his authority and employment, after leaving the door of said elevator shaft open at the fifth floor for the purpose of permitting said plaintiff S. P. Beitling to install said conduit in said shaft, without giving said plaintiff any notice or warning of his intention to start or move same, and without giving him any opportunity to get in a place of safety, when he knew or by the exercise of ordinary care would have known that said plaintiff was in a position of peril of being injured if said elevator was moved. That as a direct result of the negligence of defendant as aforesaid the said balance weight of said elevator came in violent contact with the left foot of said plaintiff S. P. Beitling thereby crushing and mashing said foot and toes and fracturing the bones of said foot and toes to such an extent that one of his toes had to be amputated; . . ."

The Liberty Mutual Insurance Company was a plaintiff upon the theory that it was the insurance carrier for Beitling's employer, had paid compensation to its co-plaintiff and was, therefore, entitled to be a plaintiff for the purpose of protecting its rights as such insurer. Nothing more need be said concerning the plaintiff company.

The defendant at the close of the evidence separately asked the court for a separately directed verdict in their favor. The requests were refused and error is assigned to each ruling.

In determining whether or not the case should have been submitted to the jury the evidence favorable to plaintiffs must be considered as true.

The plaintiff, Beitling, testified that at the direction of his employer he went to the Kresge Company store on October 6, 1936, for the purpose of connecting a paper baler on the fifth floor with a switch in the basement. On that occasion he and his helper Wilson, after taking their tools and materials on the freight elevator to the fifth floor, concluded that in doing the work it was necessary to extend the wires from the bailer down the shaft to the switch. He then went to the second floor, told Funkhouser, the acting manager of the Kresge Company store, the manner in which he had concluded to do the work, and Funkhouser told him to see the elevator operator or the house electrician; and that nothing more was said by Funkhouser. On the next day he returned to the store, went to the fifth floor on a passenger elevator and there met Hicklin who was operating the freight elevator; asked Hicklin for the use of the elevator, to which the latter replied that he could not do that. Hicklin, on the request of Beitling, opened and left open the door of the shaft for the purpose of allowing the latter to work "inside the doorway." Before the elevator left the fifth floor Beitling asked Hicklin if he would notify him before moving the elevator. The reply was, yes. The elevator was then moved to the first floor and stopped. Beatling, in undertaking his task, sat on the floor in the door of the elevator shaft facing south and placed his left foot on a steel girder extending east and west across the shaft. The girder was 8 to 12 inches lower than the floor. While in that position he was looking directly at the elevator. After working about five minutes he saw the elevator start upward. He then threw himself backwards in effort to get out of the way but did not succeed, and the balance weight of the elevator struck and injured his left foot. No signal or warning was given that the elevator would be moved. Beitling further testified he did not see the balance weight nor the groove in which it traveled; that while he knew elevators had balance weights he had never noticed any elevator with a balance weight on the side of the shaft. In his cross examination he testified that he had been engaged in the same class of work for about fifteen years.

"Q. Now the customary manner of doing that work was to close

down the elevator always, wasn't it—stop it—not let it run while you were doing the work? A. No, sir.

"Q. How? A. No, sir.

"Q. Not? A. We had to work from the elevator—work on the elevator.

"Q. If you did that you would use the elevator as a scaffold or means of helping you do your work? A. Yes, sir.

"Q. So that that gets to the point—the elevator—you never did work before without suspending the operations of the elevator as an elevator, did you?

"The COURT: You mean except for his own use.

"Mr. JOST: I mean that, yes.

"Q. (Mr. Jost) He said now, as I understand him that he used the elevator on previous occasions as a platform or means enabling him to go up and down to do the work. Is that right? A. That is right.

"Q. On no occasion before the instant occasion did you ever try to do this work in the manner you did on the instant occasion with the elevator going up and down the shaft, did you—you never did it that way before? A. Well, I don't remember of any occasion.

"Q. Why can't you remember whether you did or not—ever do the work in this same kind of a way before? A. Oh, we have run a pipe down a short distance in an elevator shaft without using the elevator.

"Q. Mr. Beitling, here is what I am getting at. On this occasion you know that the boy that was in charge of the elevator had refused to stop it completely, didn't he? A. Yes, sir.

"Q. And you knew that he was operating it to carry and move freight? A. Yes.

"Q. You knew that before you started to do your work, didn't you? A. Yes, sir.

"Q. Now then, getting right down to the question I am trying to propound to you—You never on any previous occasion undertook to do this same kind of installation when the elevator operator was moving and was expecting to move his elevator up and down in the shaft while you were working, did you? A. No.

"Q. This is the first time of the kind? A. As far as I can remember, yes.

"Q. Yes, sir. Now then, you knew from your experience through this fifteen years of work the manner in which these sort of elevators operated up and down and with counterweights and balance weights that were a part of the moving appliance? A. Yes.

"Q. You knew very well that the elevator was equipped with counter-weights or balance weights, that when the elevator ascended in the shaft the balance weights came down? A. Yes.

"Q. And when the elevator moved down the shaft the balance weights would go up? A. I did.

"Q. And you knew it at the time you started to do this work? A. Yes, sir.

"Q. Now these balance weights and counter-weights as they are called, move up and down with the movement of the elevator, and also move on tracks or grooves, do they not? A. Yes; they do.

"Q. What I mean, to get it clear here, is that the balance or counter-weights don't just hang like a clock pendlum out in the middle of the shaft, do they? A. No, sir.

"Q. They go up and down and slide along on a track or groove at the side of the elevator where they are operated? A. Yes, sir."

The evidence of the helper, Wilson, in regard to the accident, was in substance the same as the evidence of Beitling.

Plaintiffs'. witness, Funkhouser, testified that Beitling came to his office in the store on October 6, and that he then told Beitling that if it became necessary for him to work in the shaft the elevator would be shut down.

Defendants in contending the case should not have been submitted to the jury say that Beitling was guilty of contributory negligence, as a matter of law, for the reason he chose an unusual and dangerous method of doing the work.

According to Beitling, prior to beginning work, he told Funkhouser that it would be necessary to install the conduit in the elevator shaft. Thereupon Funkhouser referred him to the operator of the elevator. Thus the jury could find the manager of the defendant company entrusted the control of the shaft and elevator, during the progress of the work, to the operator of the elevator. Beitling did exactly what Funkhouser told him to do, that is, he saw Hicklin, the operator of the elevator, arranged that the door of the shaft would be left open, and that the elevator would not be moved without warning. Beitling was not in danger until the elevator moved upward in violation of the promise of Hicklin. And although Beitling knew he was undertaking to do the work in a manner different from the method theretofore adopted by him in doing similar work, the court cannot say he was guilty of negligence as a matter of law. [Homan v. Missouri Pacific Ry. Co., 64 S. W. (2d) 617; Flori v. Dolph, 192 S. W. 949.]

In arriving at the conclusion just stated, we have not considered the evidence of Funkhouser concerning his conversation with Beitling for the reason such evidence contradicts the evidence of Beitling. The rule is well established that, in determining whether or not a plaintiff made a case for the jury, his evidence must be taken as true.

The defendant company claims no case was made against it for the reason that Hicklin in making the arrangement with Beitling in

respect to leave open the door of the elevator shaft and not to move the elevator without warning, was not acting within the scope of his employment, but was acting under the solicitation and for the accommodation of Beitling.

Hicklin, merely because he was the operator of the elevator, had no implied power to make the arrangement which Beitling claimed was made.

The evidence favorable to plaintiff, Beitling, shows that the defendant company's manager, when informed the shaft would be used in making the installation, directed Beitling to see Hicklin, and that that was the only statement made. Thus as stated above, the jury could find that defendant company, acting through its manager, conferred upon Hicklin authority to act for it during the time Beitling was working in the shaft.

On this point counsel cite and rely upon the case of Graham v. J. G. Brandt Shoe Company, 165 Mo. App. 361, 147 S. W. 165.

In that case the plaintiff was working in the bottom of an elevator shaft. His evidence was to the effect that when the work was commenced the defendant gave its elevator boy strict orders not to move the elevator in the shaft during the day, and that the elevator was to remain stationary at the second floor. The boy, in violation of the "strict orders," moved the elevator to the sixth floor, thus caused the balance weight to move downward and strike and injure the plaintiff. The substance of the defendant's evidence was that the plaintiff induced the boy to run the elevator to the sixth floor. "In other words, there is direct and positive evidence to the effect that whatever the instructions were in the early portion of the day, plaintiff thereafter assumed command of defendant's servant, the elevator boy, and directed him to run the elevator between the second and sixth floors as he did at the time plaintiff was injured."

The court held, correctly, we think, that if the plaintiff assumed to direct and did direct the boy in operating the elevator, then plaintiff could not recover for any negligence on the part of the boy in failing "properly to follow the directions given him by the plaintiff."

The facts in the Graham case are not similar to the facts in the case at bar.

In the present case we must assume that, when Funkhouser was informed the conduit would be extended down the shaft, told Beitling to see Hicklin. Why should Beitling go to Hicklin if it were not for the purpose of arranging the use to be made of the elevator while the former was working in the shaft? Thus the evidence was sufficient to allow the jury to find Hicklin, in making the arrangement with Beitling, was acting within the scope of his employment. [Flori case, *supra.*]

Of course if it were true that Funkhouser told Beitling that the

elevator would be shut down while the latter was working in the shaft, and that Beitling thereafter made the arrangement with Hicklin, then the defendant company would not be liable. [Walker v. Hannibal and St. Joseph Ry. Co., 121 Mo. 575, 590, 26 S. W. 360; Acker v. Koopman, 50 S. W. (2d) 100; Atherton v. Kansas City Coal and Coke Co., 106 Mo. App. 591, 81 S. W. 223.]

There was conflict between the evidence of Funkhouser and the evidence of Beitling. The conflict was for the jury, notwithstanding the fact the former was plaintiff's witness. [Smith v. Kansas City Public Service Company, 43 S. W. (2d) 548, 553; Perryman v. Missouri Pacific Ry. Co., 31 S. W. (2d) 24.]

The defendant company argues the evidence relating to the conversation which Beitling had with Hicklin was not admissible. Hicklin was a defendant and, for that reason, among others, his acts and statements were admissible.

The record shows, as part of the re-direct examination of Beitling, the following:

"Q. When you saw this elevator start—I want to ask you this question—Did you get out as rapidly as you could after you saw it start?

"Mr. Jost: I object to that because it calls for a self-serving, argumentative statement and conclusion. The witness can state what he did and that he has already done.

"The Court: Overruled.

"(To which ruling of the court the defendants, and each of them, by their counsel then and there duly and separately excepted at the time and still except.)

"A. Yes, I did."

The objection should have been sustained for the reason the question called for a conclusion and self-serving statement. [Brown v. Adams Transfer and Storage Co., 31 S. W. (2d) 117; Irwin v. Kelting, 46 S. W. (2d) 942.]

Plaintiffs' instruction No. 1, which the defendants criticize on many grounds, after covering preliminary matters not in controversy, informed the jury that if it further found that Hicklin left the door of the shaft at the fifth floor open for the purpose of allowing Beitling to work in the shaft and thereafter moved the elevator to the first floor and stopped

"same, then it was the duty of said Hicklin, before moving said elevator, to exercise ordinary care to ascertain whether the movement of said elevator would injure plaintiff Beitling, and not to move same until said plaintiff Beitling was in a place of safety; and if you further find that while said plaintiff Beitling was working in said elevator shaft (if you find he was so working) defendant Hicklin carelessly and negligently, as defined in these instructions, caused said

elevator to move upward and caused the balance weight of said elevator to strike and injure plaintiff Beitling's foot; and if you further find that defendant Hicklin knew, or by the exercise of ordinary care could have known that said plaintiff Beitling was working in said elevator shaft in a position where there was immediate danger of injury to said plaintiff Beitling (by being struck by said balance weight) if said elevator was moved upward, and thereafter moved said elevator upward without giving any warning of his intention to do so and without giving plaintiff Beitling an opportunity to get into a place of safety; and if you further find that as a direct result of such negligence (if you find said defendant Hicklin was so negligent) plaintiff Beitling was injured; and if you further find that during all said time said plaintiff Beitling exercised ordinary care for his own safety, then under such circumstances your verdict should be in favor of plaintiffs and against said defendant Hicklin; and if you further find that at said time said defendant Hicklin was in the employ of said defendant S. S. Kresge Company and was working for said S. S. Kresge Company and acting within the scope of his employment, then your verdict should be in favor of plaintiffs and against both defendants. . . .''

The instruction not only required Hicklin to exercise due care, but it required him ''not to move'' the elevator *until* Beitling ''was in a place of safety.'' Thus the jury was in effect told that the defendants were insurers. This was error. The instruction said that if Hicklin knew or in the exercise of due care could have known that Beitling was in a position ''where there was immediate danger of injury to said plaintiff Beitling (by being struck by said balance weight) if said elevator moved upward, and thereafter moved said elevator upward without giving any warning of his intention to do so and without giving plaintiff Beitling an opportunity to get into a place of safety; . . .''

There is not one word of evidence tending to show that Hicklin knew or had cause to believe that Beitling had or would place his foot in the path of the balance weight. The evidence shows that operating the elevator between the first and third floors would not have harmed Beitling if his foot had not been in the groove along which the balance weight traveled.

Beitling said he was not aware of the fact that his foot was in the groove until the elevator moved upward. He was an experienced workman. If he did not know his foot was in the groove, it should not be said that Hicklin, five floors distant, should have known that fact.

The instruction enlarged the duty of Hicklin under the arrangement made with Beitling, and may have caused the jury to believe Hicklin had authority to make the arrangement with Beitling, not-

1204

withstanding it found Funkhouser related correctly the conversation he had with Beitling.

It must be remembered there was evidence showing that prior to the making of the arrangement with Hicklin the manager of the defendant company told Beitling that the elevator would be "shut down" during the installation of the conduit. If that evidence were true, then Beitling was charged with notice that Hicklin lacked authority to make the special arrangement.

For the reasons stated, the instruction was erroneous.

The court by instruction C-2 advised the jury as to the form of verdict. The instruction prescribed the form of verdict for a finding for the plaintiffs against both defendants; form for finding against Hicklin and in favor of his codefendant; form for finding in favor of both defendants; but did not contain form for finding in favor of Hicklin alone. Verdict for Hicklin would not have been consistent with a verdict against the Kresge Company. The instruction was proper.

For the reasons stated, the judgment is reversed and the cause remanded. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded. All concur.