## Lexington & Eastern Railway Company v. White.

(Decided November 29, 1918.)

### Appeal from Breathitt Circuit Court.

1. **Master and Servant—Independent Contractor.**—Where one enters into a contract to render service for another, and employs his own help, the other having no control over the help and no right to direct the manner in which the work is to be done, further than to require that it shall be done in accordance with the plans and specifications under which it is contracted to be done, or in other words the contractor does the will of his employer as to the result of the work and not as to the means and manner in which it is to be done, such a one is an independent contractor.

2. **Master and Servant—Independent Contractor—Ordinary Care.**— Where the servants of an independent contractor to do construction work for a railroad company are engaged under the duties of their employment in working in a tunnel of a railroad, the railway company is charged with notice of their presence at such place, and owes them the duty of exercising ordinary care to avoid injury to them in the operation of its trains.

3. **Master and Servant—Independent Contractor.**—Where an independent contractor is engaged in doing construction work for a

railroad company in one of its tunnels, it is not negligence upon the part of the railroad company to continue to operate its trains through the tunnel in the course of its business, but it owes the duty to the servants of the independent contractor to give to them a reasonably sufficient warning of its intention to do so, in time to enable them to go out of the tunnel before the passage of the train through it.

4. Negligence—Concurrence of Injury—Liability.—Where the negligence of two different persons concur to cause an injury to another, the comparative degree of the culpability will not affect the liability of either, if both were negligent in a manner contributing to the injury. They are responsible jointly or severally.

5. Appeal and Error—Reversal of Judgment—Variance.—A judgment will not be reversed because of an immaterial variation between pleadings and evidence as such variance does not mislead the party either in prosecuting the action or maintaining the defense upon the merits.

6. Master and Servant—Lost Time—Instructions.—Where an action is maintained for an injury, and damages are sought for loss of time, the claim for lost time must be specially pleaded in such way as to apprise the other party of the extent of the claim, and if this is not done no evidence should be permitted in support of the claim, if objected to, and no instruction given authorizing a recovery on that account.

7. Master and Servant—Action for Personal Injury—Lost Time.—In an action for personal injuries if a claim for damages for loss of time is defectively pleaded in the petition, and no motion is made requiring it to be made more specific, and no objection is made to the evidence in support of the claim, which proves the extent and value of the lost time, it is not error to give an instruction permitting a recovery on that account.

8. Master and Servant—Action for Personal Injury.—In an action for damages for personal injury and an instruction is given permitting a recovery for loss of time, and also for the permanent impairment of power to earn money, the instructions should limit the time for the damages for the latter to begin when the former has ended.

BENJAMIN D. WARFIELD, SAMUEL M. WILSON and O. H. POLLARD for appellant.

J. B. ADAMSON, ADAMS & HOLLIDAY and T. T. COPE for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

This action was instituted by the appellee, Harrison White, against the appellant, Lexington & Eastern Railway Company, Mason & Hanger Company and Armstrong & Bragg Company. He alleged, that he was a

servant of, and in the employment of the appellant, Mason & Hanger Company and the Armstrong & Bragg Company, and under the duties of his employment, was engaged as a laborer, and under the direction of a foreman, was assisting in concreting the Line Tunnel, which is a tunnel upon the road of appellant, Railway Company, between Jackson and Hazard, and was engaged, at a point, several hundred feet, within the tunnel and while thus engaged, and exercising ordinary care for his own safety, the agents and servants of appellant and its co-defendants, superior in authority to him, negligently ran the trains of appellant through the tunnel, thereby, practically closing both of the mouths of the tunnel and filling it with smoke, gases, soot, heat and steam from the engines and thereby smothered and suffocated him, causing him to become unconscious, and to fall upon his face, whereby his face and head were bruised and cut, causing him to suffer pain and discomfort, permanently disfiguring his face, and permanently injuring his respiratory organs, and from which he had suffered damages in the sum of $3,000.00. He, also, alleged, that the agents and servants of appellant and its co-defendants, superior in authority to him, knew or by the exercise of ordinary care, could have known of the danger imposed upon him, by running the engines and trains through the tunnel, but that he did not know, nor by the exercise of ordinary care, could he have known of the danger incurred by him by the running of the trains through the tunnel, nor did he know their purpose to so operate the trains or the danger to him by their so doing, in time to have saved himself from injuries.

After the filing, by the appellant and the Mason & Hanger Company, of general demurrers to the petition, which were overruled, then, each, filed an answer.

The appellant, Railway Company, traversed the averments of the petition, and in addition, thereto, interposed pleas of contributory negligence and assumed risk, and, also, averred that appellee, at the time he received his injuries, was not its servant, but, was an employe, and in the service of its co-defendants, Mason & Hanger Company and Armstrong & Bragg Company, who were independent contractors, and that appellee's cause of action, if any, was exclusively against them, or one or the other of them.

The Mason & Hanger Company, by its answer, traversed the averments of the petition, and in addition, offered pleas of contributory negligence and assumed risk, and, further, plead, that it was an independent contractor, and that Armstrong & Bragg Company, in whose. service, the appellee was at the time of his injury, was an independent contractor, both, as to the railroad company, and, as to it, and that the Armstrong & Bragg Company was solely liable for any injury, which the appellee suffered.

The appellee, interposed a general demurrer to each of the answers and to each paragraph of each answer, all of which were overruled, and then, by agreement of the parties, the affirmative matters in each of the answers, was controverted upon the record.

Previous to the completion of the issues, between appellee and the two answering defendants, at the instance of appellee, and upon his motion, the action was ordered to be dismissed, as to the Armstrong & Bragg Company.

The action coming on for trial, at the completion of the evidence, offered, for the appellee, a motion for a directed verdict in favor of the Mason & Hanger Company, was sustained, and the action as to it, was adjudged to be dismissed.

A similar motion in favor of the appellant, railroad company, was overruled, and at the conclusion of all the evidence, it, again, interposed a motion for a directed verdict in its favor, which was, also, overruled.

The action as between appellee and appellant, railway company, was submitted to the jury, which rendered a verdict in favor of appellee for the sum of $3,000.00, in damages, and a judgment of the court was rendered in accordance with the verdict.

The appellant filed grounds, and moved the court to grant it a new trial, which being overruled, it has appealed.

The judgment is sought to be reversed, because, as is contended, the court erred in denying a directed verdict for appellant; in giving and refusing instructions to the jury; in the admission and rejecting of testimony; and because the verdict is contrary to law, and not sustained by the evidence; and because the verdict is excessive and made under the influence of passion and prejudice.

To determine the soundness of these contentions, it becomes necessary to consider the facts of the controversy, as developed by the evidence. The appellant, Lexington & Eastern Railway Company, proposing to construct a line of railway, from Jackson to Hazard, entered into a contract with the Mason & Hanger Company to construct a portion of the line, including a tunnel on the line, at the point, where the proposed line of railway crosses the line separating the counties of Breathitt and Perry, and from which circumstance it has received the name of the Line Tunnel. The Mason & Hanger Company contracted with the Armstrong & Bragg Company to perform that portion of its contract, which related to lining the tunnel with concrete, and doing other things with relation to the lining of the tunnel, which the Mason & Hanger Company had contracted with the appellant to do. It seems, that trains were being operated over the line from Jackson to Hazard, as early as the first of July, 1912, and during the time, thereafter, until the end of the year, the Armstrong & Bragg Company was engaged in performing its contract. While engaged in placing the concrete lining upon the tunnel, the appellee was employed by the Armstrong & Bragg Company and worked under the direction of its foreman, both in and out of the tunnel, and performed such services, in assisting in the work, as he was directed to do. While so engaged in the tunnel, railway trains of appellant moved by large engines often passed through it. The appellee was engaged in working for his employer, in and about the tunnel, for about two months of time, in all, from the first of July until the 25th day of September, 1912. Upon the last mentioned day, the injuries for which he sues are alleged to have been received. The trains, which passed through the tunnel, were passenger, freight, and construction trains, the first mentioned kind passing every day. The men who worked for Armstrong & Bragg Company, as a general rule, went out of the tunnel when a train would be preparing to pass through it, although all of them did not invariably do so, but on occasions some of the men would remain in the tunnel, while a train would be passing through, if they chose to do so, although they were free to go out, if they chose. The proof does not show that appellant ever remained in the tunnel under such circum-

stances, except upon one occasion, and it is not shown whether he remained in the tunnel upon that occasion of his own choice or from not having an opportunity to go out before the, train entered. The appellant railroad company had given orders, which applied to every train entering and passing through the tunnel, to the effect, that, those operating its trains and proposing to enter the tunnel with a train, should send a messenger through the tunnel, in advance of the train, to give warning to the men, who might be working in the tunnel, and in most instances it seems from the evidence, that this precaution was observed.

The lining of the tunnel with concrete had been completed and for two or three days preceding the receiving of the injuries by the appellee, the Armstrong & Bragg Company had been engaged with a force of from ten to a dozen men, of whom the appellee was one, in gathering together and removing from the tunnel the loose and wasted concrete and other debris, which remained in the tunnel from the work of lining it. It used a flat car propelled by a small engine denominated a "dinkey," in removing the debris from the tunnel. The men would gather up the debris and place it upon the flat car with shovels, and when the car was loaded, it would be pulled out of the tunnel and the debris cast upon the outside. On the 25th day of September, the servants of Armstrong & Bragg Company, including appellee, were, under the direction of a foreman of the employer, engaged in working at a point in the tunnel, according to the testimony of appellee, about one-third of the distance through the tunnel from the entrance in the direction of Jackson, although other witnesses place them at a point about two-thirds of the distance through the tunnel from that entrance. A train, other than a passenger train, presumably a freight or construction train, entered the tunnel from the entrance, in the direction of Jackson. As it approached the men in the tunnel, they received warning of its coming, in some way, not stated, when they, including appellee, got upon the flat car, which was then moved out of the tunnel in the direction of Hazard. The railway train then followed the flat car and "dinkey" on out of the tunnel, and attaching a box car or box cars, immediately returned through the tunnel in the direction, from which, it had come. As stated by ap-

pellee, the flat car and "dinkey" engine then very shortly, thereafter, returned into the tunnel, to the point, from which it had moved to get out of the way of the train. The smoke and gases from the engines made breathing difficult at this point and uncomfortable, and in a very few minutes the railway train returned into the tunnel and approached the point where appellee was working without having given any warning beforehand of its intended approach, but appreciably slowed down to some extent as it arrived at that point. No direction was given by the foreman to the men to retire and the flat car was instantly started and went out of the tunnel before appellee had any opportunity to get upon it, and the railway train then passed a third time through the tunnel. The appellee, according to his statement, when the flat car was moved out, was then nearly a thousand feet from the mouth of the tunnel through which he must go out, or else must go out at the other end, and in so doing pass the oncoming train. The smoke rendered the tunnel so dark, that, with the lights, on hand, he could see but two or three feet. Very shortly, he was overcome and suffocated by the smoke and fumes and was rendered unconscious. He fell upon his face and cut and bruised it, and was carried out of the tunnel by two fellow workmen, and after some little time was resuscitated. He was unable to do any labor for three or four months and his lungs were permanently injured by the effect of the smoke and gases. Two other men were partially suffocated and overcome by the smoke at the same time. One of the witnesses for appellee, while he corroborates the appellee as to the effect of the dense smoke and the fact that the trainmen did not warn appellee of the train's intended approach, testifies, that the flat car, with the appellee and the other men working with it, did not return into the tunnel after they went out, until the railway train had passed through the tunnel the third time, and the suffocation arose from the smoke which was in the tunnel at the time they returned to their work. Another witness for the appellant, while corroborating him as to the movements of the train, fixes the time, at which, appellee was overcome, at one hour after the time the train passed through the third time, and during this time appellee had continued at work, although appellee stated that after the passing

of the train the third time he was suffering from the effects of the smoke.

One issue which seems to have been sharply contested was the relationship between the appellee and appellant; the appellee contending, that, he was a servant of appellant, while appellant contends, that, he was a servant of an independent contractor and that the relationship of master and servant did not exist between them. There is no dispute as to the fact that appellee was an employee of Armstrong & Bragg Company, which was a subcontractor for the work to be done in relation to the lining of the tunnel, and it does not appear that appellant, in any way, took any authority over, or supervision of, the appellee. The contracts, in writing, between appellant and Mason & Hanger Company, and between the latter company and Armstrong & Bragg Company or such parts of them, as the parties deemed necessary to illustrate the issue, were offered in the evidence. Without entering into a discussion of the many conditions and covenants of these contracts, we have concluded that the Armstrong & Bragg Company, in the performance of their contract, represented the will of its employer only as to the result of the work and not as to the means by which it was to be accomplished; it had the right to select its own servants; the appellant had no authority over the employees of Armstrong & Bragg Company, and no right to direct the manner in which the work should be done, further, than to require, that it should be done in compliance with the specifications under which it was contracted to be done by the Mason & Hanger Company. The contract provides that the railway company should have an engineer to exercise a general supervision over the work, to see that it was done according to the contract, but the engineer was not authorized to interfere or direct as to the details of the work, or as to the manner in which it should be done. A part of one of the clauses of the contracts is almost identical with the wording of a clause of a contract in M. H. & E. R. R. Co. v. Owen, 147 Ky. 1, which this court held, in that case, to make the relation of master and servant exist and not that of an employer and an independent contractor, but the remainder of the clause in the contract in the instant case, changes the force and signification of the language quoted in the opinion, *supra.*

A consideration of all the terms of the contracts show that the work contracted to be done by Armstrong & Bragg Company was to be done in accordance with specifications agreed upon. In Pine Mountain R. R. Co. v. Finley, 117 S. W. 413, it was said: "Ordinarily, where one employs another to execute a piece of work, and the one so employed has the right to select his own assistants or help, the employer having no control over the hands of the employee and no right to direct the manner in which the work shall be done further than to require that it shall be done in accordance with the specifications under which it is contracted to be done, the one so contracted with is an independent contractor." In John's Admr. v. McKnight & Co., 117 Ky. 655, the court said: "An independent contractor is one who renders service in the course of an occupation representing the will of his employer only as to the result of his work, and not as to the means by which it is to be accomplished." The same doctrine is substantially held in Mason & Hoge Co., et al. v Highland, 116 S. W. 320; Ballard & Ballard Co. v. Lee's Admr., 131 Ky. 412; L. & N. R. R. Co. v. Smith's Admr. 134 Ky. 47; See v. Leidecker, 152 Ky. 724; L. & N. R. R. Co. v. Newland, 176 Ky. 166, 26 Cyc. 970. Hence it is concluded that Armstrong & Bragg Company, the employer of appellee, was an independent contractor, and the relation nor any of the obligations arising from the relation of master and servant existed between appellant and appellee. (a) Appellant now insists, that, in as much, as the relation of master and servant did not exist between appellant and appellee, and appellant was not under an obligation to use ordinary care to provide the appellee a safe place in which to work, that appellee's cause of action entirely fails, and the court should have directed a verdict in its behalf. The appellant, however, did owe the appellee a duty. As a servant of the independent contractor, Armstrong & Bragg Company which was engaged in the work upon appellant's tunnel, by invitation of the appellant, it was the duty of appellant to use reasonable precautions not to do him an injury in the operation of its trains. The work having been in progress upon the tunnel for two or three months, the railway company was charged with notice of the presence of appellee and his fellow workmen in the tunnel. The workmen could not perform their duties with-

out entering and being in the tunnel. The appellee was entirely within his rights and duty in being in the tunnel, and there engaged in the work which his employer had set him to do, and was in no sense a trespasser, or a man upon the railroad's property without right. 33 Cyc. 809; A. & E. Ency of Law 738; C. N. O. & T. P. Ry. Co. v. Winningham, 156 Ky. 434; L. & N. R. R. Co. v. Gamble's Admr., 156 Ky. 91; C. N. O. & T. P. Ry. Co. v. Smith's Admr. 168 Ky. 192.

The railway company, of course, is not liable to appellee for an injury suffered by him unless a failure to perform a duty, which it owed to him, was the proximate cause of the injury. It was not negligence on the part of appellant, nor the failure of a duty to appellee, for it to operate its trains in the course of its lawful business, through the tunnel. It was not necessary for it to refrain from the operation of its trains through the tunnel, in order to extend to appellee a reasonable protection from injury. To refrain from the operation of the trains would be an unreasonable requirement. The trains can not be operated through a tunnel without the engines putting forth smoke and gases, which will remain until the particles settle or are driven out. Hence, it was not negligence on the part of the railway company to fill the tunnel with smoke and gases from burning coal, if it was necessarily done in the operation of its trains, in the course of its business. It was, however, clearly the duty of the railway company when proposing to run a train through the tunnel to give to the men who were working in the tunnel, a warning reasonably sufficient to notify them of its purpose, and in time, reasonably sufficient to enable the men to make use of such precautions as were reasonably necessary to save themselves from injury, by going out of the tunnel. If, after such warning, they chose to remain in the tunnel they assumed whatever risk they took in so doing, for it was their duty to exercise ordinary care for their own safety. The duty of exercising ordinary care for their own safety resting upon the men, if the railway company failed to give warning of the intended passing of a train through the tunnel, and thus was guilty of negligence in such failure, yet, if the workmen received knowledge of the coming of the train in time, to enable them to retire from the tunnel, and declined to do so, they assumed the risk of remain-

ing.  **If the men** went into the tunnel, when it was filled with smoke from engines having passed through it and after the engines had passed through, and suffered injuries from it, it is clear that no negligence could be attributed to the railway company on that account as no negligence arose from filling the tunnel with smoke unless it was done without warning.  If a workman chose to remain in the tunnel and to continue in his work amid the smoke until he was overcome and injured by it, when he could have retired from it before he incurred injury, the negligence on account of smoke could not be attributed to the railway company as it was his election to remain and risk the consequences.

(b)  It is insisted, that a peremptory instruction, directing a verdict for appellant should have been given for the following further reasons:

(1)  The evidence failed to show any negligence upon the part of the railway; (2) The suffocation of appellee by the smoke could not have been contemplated by any one; (3) it can not be determined whether the smoke from the "dinkey" engine or that from the railway's engine caused the suffocation; and (4) there was a variance between the allegations of the petition and the proof. These contentions will be considered, in the order above stated.

(b1)  While the witnesses for appellee do not fully corroborate his theory of the manner of the injury, the evidence of appellee tends to prove, that, the servants of appellant, operating its trains, failed to give any warning of the purpose to enter the tunnel with the train, the second time, it entered from the direction of Jackson, and that it was very near to him, before he was aware of it, and that he did not have time, reasonably, in which to enable him to retire from the tunnel after he became aware of its presence in the tunnel, and before he was overcome by suffocation; that the "dinkey" with the flat car rushed away before he had an opportunity to get upon it; and as before stated that he was then nearly one thousand feet from the mouth of the tunnel in the direction of Hazard, and nearly one-half that far from the mouth toward Jackson from which direction the train came or was coming; that it was so dark, that one could not see, by the lights, at hand more than two feet, and was too dark to walk and that he was very quickly

overcome. The railway company is not liable for the failure of the "dinkey" train to give appellee time, in which to get upon it, but the fact, that, the servants of his own employer were thus negligent if they were thus negligent, will not excuse the railway company for its negligence, in failing to give warning of its approach, if but for its negligence, the injury would not have occurred. The engineer of the "dinkey" was neither the agent nor servant of appellee. The fact that the negligence of those operating the "dinkey" train concurred with the negligence of the railway company as the proximate cause of the injury, does not excuse the railway company, when but for its negligence the injury would not have been sustained. The rule is stated by Wharton's Law of Negligence, section 395, as follows:

"The comparative degree in the culpability of the two will not affect the liability of either. If both were negligent in a manner contributing to the result, they are liable jointly or severally." City of Louisville v. Heitkemper's Admx., 169 Ky. 167; Shearman & Redfield on Negligence, section 346; Whitman & Co. v. Warren, 23 R. 2120; Louisville v. Hart's Admr., 143 Ky. 171; Paducah Traction Co. v. Sine, 111 S. W. 356; Louisville Home Telephone Co. v. Gasper, &c., 123 Ky. 128. The evidence of appellee is sufficient to require the submission of the action to the jury upon the question of negligence or no negligence of the railway company.

(b2) The contention that the probable suffocation of appellee by smoke could not have been within the contemplation of anyone, and hence lacking in an element necessary to constitute negligence, is not tenable. Although no one had previously been overcome by smoke in the tunnel, it is a matter of common knowledge, that a sufficiency of smoke will suffocate one exposed to it. When the servants of appellant entered the tunnel with the train from the mouth, toward Jackson, the second time, they knew that the engine had just previous to that time passed through the tunnel twice in rapid succession. Each passing of the engine added to the density of the smoke. They, also, knew that the "dinkey" had just withdrawn, and it can not be held, that under these circumstances, it would not be reasonably anticipated, that the addition to the density of the smoke by a third passage of the engine, would not be calculated to be injurious to life and health.

(b3) The insistence that it was a mere guess and not susceptible of determination from the evidence, whether the suffocation arose from the smoke of the "dinkey" or from that of the railway's train, and hence a verdict should have been directed is without merit. Neither the appellee nor any other had ever suffered from the smoke from the "dinkey," although working with it for hours, at a time. The evidence shows, that it was the great volume of smoke produced by the railway engine passing through the tunnel the third time, in succession, in a very short time, which added to the smoke from the "dinkey," produced the suffocation. It can be inferred from the evidence, that but for the smoke put forth by the railway's engine upon its third entrance into the tunnel, the injury would not have occurred. This question, as the others, was one for the jury under proper instructions.

(b4) The variance complained of is, that the petition alleged, that appellee was a servant of all the defendants—the appellant, the Mason & Hanger Company, and Armstrong & Bragg Company—while the proof showed, that he was the servant of the latter, alone, and not of appellant. The appellee's cause of action, however existed, regardless of the fact, that he was not a servant of appellant, as alleged. The variance was not material, because appellant could not have been misled by it in maintaining its defense upon the merits. This variance might have been corrected upon the trial and upon the return of the case may yet be done. Civil Code, sections 129, 130, 131.

(6) The instructions directed the jury to find for appellee, if the appellant's engines filled the tunnel with smoke, while appellee was working therein, and he suffered injuries, therefrom. Thereby, a recovery was allowed against appellant, for an act, which did not amount to an act of negligence upon its part unless done without warning. The action seems to have been submitted upon an incorrect theory, as to the respective rights of the parties, which more or less affected all the instructions given, except that relating to the measure of recovery. The latter instruction is criticized for the reason, that it permitted a recovery for lost time, when the petition did not set out the time lost, nor the damages suffered thereby. Damages sought for lost time, on account of

an injury, are what are denominated special damages, and under the averments of the petition, in this case, any evidence offered of damages on that account should have been rejected, if an objection had been made, and an instruction upon the subject refused. Lexington Ry. Co. v. Britton, 130 Ky. 676; Central Ky. Traction Co. v. Chapman, 130 Ky. 342; Blue Grass Traction Co. v. Ingles, 140 Ky. 488; Prestonburg Coal Co. v. Wallen, 159 Ky. 369; L. & N. R. R. Co. v. Mason, 24 R. 1625; I. C. R. R. Co. v. Beeler, 142 Ky. 777; Barnes v. Louisville Electric Light Co., 118 Ky. 830; L. & N. R. R. Co. v. Dickey, 31 R. 895. In this case, however, while the claim for special damages on account of loss of time was defectively pleaded, the time and value of the services were proven without objection, and no motion was made to make the pleading more specific. In this state of case, an instruction permitting a recovery for lost time is not erroneous, if the recovery is limited to the damages proved. The instruction is, however, erroneous, in that it does not limit the appellee's right to the recovery of damages for permanent impairment of his power to earn money to begin when the allowance for lost time is ended. McHenry Coal Co. v. Taylor, 165 Ky. 144; Blue Grass Traction Co. v. Ingles, 140 Ky. 488; Main Jellico Mountain Coal Co. v. Young, 160 Ky. 397.

For the reasons indicated the judgment is reversed, and cause remanded for proceedings not inconsistent with this opinion.