(83 South. 364)

No. 23245.

LINCOLN v. APPALACHIAN CORPORA-
TION OF LOUISIANA.

(Nov. 3, 1919. Rehearing Denied Dec. 1, 1919.)

(Syllabus by Editorial Staff.)

1. NEGLIGENCE ☞44—INJURIES BY FALLING
DOOR.

Where a fire door in defendant company's
building was so hung and weighted that it
might be bounced off the rail by the act of
closing it, and plaintiff, the employé of a de-
tective agency working in the building as night
watchman, was injured when he found the
door shut and attempted to push it open, it
falling on him because it had come off its
rail, defendant was liable to plaintiff for his
injuries, having been negligent.

2. NEGLIGENCE ☞32(2)—DUTY TO WATCH-
MAN ON PREMISES WITH OWNER'S CONSENT.

Plaintiff night watchman furnished for de-
fendant company's building by a detective agen-
cy, though not an employé of defendant com-
pany in the strict sense, was nevertheless en-
titled to hold defendant company to its duty
to him to provide proper tools and appliances
and to furnish a safe place to perform his du-
ties, the same for all practical purposes as if
he had been an employé, not because of con-
tractual relation, but because of company's duty
to use ordinary care to one working on prem-
ises for its benefit with consent.

3. DAMAGES ☞132(3) — AMOUNT OF VERDICT
FOR PERSONAL INJURIES NOT EXCESSIVE.

A night watchman of 68, earning $45 to $50
a month, who was severely injured, the fifth lum-
bar vertebra having been dislocated or frac-
tured by the fall of a fire door upon him, also
having been occasioned severe suffering and
rendered practically unable to do remunerative
work, was entitled to a verdict of $3,000.

Appeal from Civil District Court, Parish
of Orleans; George H. Théard, Judge.

Action by George A. Lincoln against the
Appalachian Corporation of Louisiana.
From judgment for defendant, plaintiff ap-
peals. Judgment annulled and reversed, and
judgment ordered for plaintiff.

Walter S. Lewis, of New Orleans, for ap-
pellant.

Hall, Monroe & Lemann, of New Orleans,
for appellee.

DAWKINS, J. Plaintiff appeals from a
judgment rejecting his demands for damages
on account of personal injuries alleged to
have been received through the fault and
negligence of defendant. The defense is a
general denial, coupled with pleas of con-
tributory negligence and assumed risk.

Plaintiff was employed by the Boylan De-
tective Agency, a private concern, which, up
to July 23, 1917, had furnished the Brooklyn
Cooperage Company with day and night
watchmen for its building occupying the en-
tire square bounded by Erato, Thalia, South
Peters, and South Front streets in the city
of New Orleans. About that date, the prop-
erty was acquired by the defendant herein,
who continued the arrangement for guarding
the building with the Boylan Detective
Agency.

Under his employment, plaintiff was re-
quired to report on the premises for duty
at 5:30 p. m., and watch the same until 6 a.
m., at which hour he was relieved by the day
watchman employed by the same agency.
His duties required that he pass through the
building at regular intervals, and that he
register his presence by sending in signals
to a central station.

The building was divided into several
rooms or compartments, with doors or open-
ings from one to the other, which were kept
closed when not in use by large metal fire
doors weighing several hundred pounds each;
the idea being that, if fire should break out
in one compartment of the building, these
doors would prevent its spreading to others.
The doors were supported by wheels or rol-
lers attached to the tops, which rested and
moved upon a stationary rail or bar fastened
to the wall above the opening. The rail or
track was not constructed exactly on the
horizontal plane, but dipped or inclined

downward in the direction in which the door moved when closing, so that its weight might aid in closing; and there was or should have been attached to the outer edge or end a weight which was designed for the double purpose of facilitating the movement of the door, and for holding it open when the opening was being used. This weight was suspended on a cord or rope made of a substance which would melt at a given temperature. If fire broke out, the cord would break when that temperature was reached in the building, thus releasing the door and permitting it to close automatically and preventing the spread of the fire. There were some 18 or 20 of these large doors which plaintiff was required to open and close in his rounds of the building during the night. However, the one by which plaintiff was injured was usually kept open.

On July 26, 1917, plaintiff reported for duty at the usual hour, received the keys from the day watchman, and started on his rounds. He went to the door which opened from the wareroom into the boiler room, and, contrary to custom, found it closed. Taking hold of the edge of the wall or facing with one hand, he endeavored to push the door up and open with the other, when its upper end, in some way, became disengaged from the track or rail, and began to fall forward and toward plaintiff. He attempted to brace or hold it up and off of himself, but, on account of its great weight—some 800 pounds—was unable to do so, and it fell, pinning plaintiff to the floor from above the waist down. There he remained, unable to extricate himself, for about half an hour. Eventually, his cries for help attracted the attention of a passerby, and through the combined efforts of two or three men the door was removed and plaintiff was taken to the Charity Hospital, where he remained for some two weeks, later being removed to a private sanitarium, and from which he was discharged some time in October.

Plaintiff's injuries in the region of the lower part of his back were quite serious, the fifth lumbar vertebra having been dislocated or fractured, and other bruises and contusions were received from which he suffered severely. Up to the date of the trial in the court below in April, 1918, he had been able to do very little work, and had earned practically nothing. Plaintiff was 68 years of age and had followed the same or similar employment for a long number of years, and his salary at the time was between $45 and $50 per month.

[1] There is evidence in the record tending to show that plaintiff was somewhat rough and careless in handling these doors, as occasionally one had been found off the rail or track early in the morning when no one else had been in the building or had any occasion for opening and shutting them during the previous night but plaintiff. Possibly on two or three occasions, doors had been found down and had been replaced. This method of hanging and operating the doors seems to have been in use in this particular building some 25 years, and, while it would seem, to the uninitiated, at first glance, that a door of such great weight, in which there existed the possibility of its jumping off the track and falling to the floor, should have been protected by a guard rail or bar which would have held it up under such circumstances, that point is touched very meagerly in the record. However, the evidence shows conclusively that this particular door was kept open, and plaintiff had had no occasion to handle it before; that it had been closed by the engineer on the afternoon of the day that plaintiff was injured, under orders from the manager or superintendent, and was so found by plaintiff when he attempted to open it. It is also fairly established that the weight which should have been attached to the outer edge to facilitate its opening was not there, and that, instead, the door was probably tied to an iron pipe while open. The record fur-

ther shows that the thing which caused this and the other doors to jump the tracks was rapid closing, which brought their inner edges in violent contact with the bumpers or facings of the doors, thereby causing them to bounce off the rail. We can see no reason, and none has been shown, why the operation of pushing the door open should have thrown it off the track. The conclusion, therefore, seems irresistible that this particular door must have been thrown off the rail by the act of closing it during the afternoon of the day plaintiff was injured, and this is accentuated by the fact that there was no weight attached to the outer edge, and it probably closed more violently than it would have under the steadying effect of a weight. If this were true, the door simply stood in an upright position, in contact with but not on the rail, and, when the force of plaintiff's effort to push it open was applied, it was disengaged and fell upon him.

Plaintiff denied having been warned by the day watchman, under instructions from the manager, on the occasions when other doors had been found off the rails, against such rough handling; but we think the affirmative of this contention is fairly established. Still, we do not see how this can affect the matter in view of the circumstances under which he was injured by the particular door in question. We think defendant is convicted of negligence, both in its failure to have the door in question provided with a proper weight to permit closing normally, and in the act of the engineer, who was instructed to close the door by the manager, in closing it in such a manner as to leave it off the rail, thus forming a trap into which the plaintiff fell when he attempted to push it open.

[2] Plaintiff was not the employé of the defendant, in the strict sense; he having been employed, as above indicated, by the Boylan Detective Agency, who held the watching of the building under contract. But its duty to him, in providing proper tools and appliances, and in furnishing a safe place to perform his duties, was for all practical purposes the same as if he had been an employé; not because of any contractual relation, but because of the duty to use "ordinary care" towards those who worked on its premises for its benefit and with its knowledge and consent. See cases cited in note to Cleveland, C., C. & St. L. R. v. Berry, 46 L. R. A. 52; Thomp. on Negligence, vol. 1, p. 898, §§ 979, 680; Stevens v. United Gas Co., 73 N. H. 159, 60 Atl. 852, 70 L. R. A. 119; and authorities cited.

[3] The testimony of the X-ray experts conflicts as to the extent of plaintiff's injuries, but that of the one who made the examination about the time of the accident seems to be corroborated by the physical circumstances, the length of time which plaintiff was required to remain in hospital, and his inability to perform any work of consequence even up to the time of the trial. Considering his age and earning capacity, we think a judgment of $3,000 would reasonably compensate for his injuries under all the circumstances.

It is true that defendant had only acquired the property a few days prior to the accident, but it is not disputed that its legal relation to the matter is the same as would have been that of the Brooklyn Cooperage Company, had the building not been sold.

For the reasons assigned, the judgment appealed from is annulled and reversed, and it is now ordered, adjudged, and decreed that the plaintiff have and recover of the defendant judgment in the full sum of $3,000, with legal interest from judicial demand, and that the defendant pay costs of both courts.

MONROE, C. J., takes no part.