## Young's Adm'r v. Farmers & Depositors Bank.

(Decided March 23, 1937.)

W. A. HUBBARD for appellant.

WOODWARD, DAWSON & HOBSON for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

Upon a directed verdict, judgment was rendered for the defendant, the Farmers and Depositors Bank, in this suit by the administrator of the estate of Edward A. Young to recover damages for his death, alleged to have been caused by the bank's negligence.

On May 21, 1935, Butler, the proprietor of a plumbing establishment, and a representative of the gas com-

pany, went to the bank in St. Matthews to investigate what was thought to be a gas leak in the basement. At that time there was about 18 inches of water in the basement being pumped out by a fire engine. A peculiar odor, which seemed not to be of natural gas, but of gasoline or some other substance, was easily detected. Some small greasy or oily spots with a peculiar odor were found on the water. A gallon can was floating about which smelled as strong as the substance on the water. A very careful examination of the natural gas piping was made, but no leak was found in the basement. The tests did disclose that somewhere in the system other than in in the basement there was a small leakage. It was then thought to be on the second floor, and was later discovered to have been there. This leakage, however, was so insignificant as not to be dangerous, and the cashier of the bank was so advised. Butler reported to him that he thought there had been some oil or something of the kind in the can, but there was no danger from it. However, it was later learned that this was a can used by the janitor for his mop, and it had never contained any explosive liquid. But Mulloy, the gas company's inspector, advised Butler and one of the bank's directors that, while there was no gas escaping, the substance on the water was dangerous. At that time an open grating in the pavement afforded ventilation for the basement.

Six days later, on Monday, May 27, when Brady, the colored janitor, went to the bank to open it, the fumes from the basement were very strong. He opened the transoms and when Mr. Nelson, the cashier, arrived, Brady told him of the gas and cautioned him and the assistant cashier not to strike any matches. Nelson, he testified, immediately called Butler, the plumber. This witness says that Mr. Nelson first talked to a woman and then to Butler and informed them there was water in the basement and the odor of gas there, and asked that some one be sent immediately. However, Butler's bookkeeper testified that only she talked with Mr. Nelson and that his request was to send some one to pump out the water. She was most positive that he said nothing whatever about the odor or presence of gas.

O'Leary, a master plumber employee, first went to the bank and then returned to the shop. Butler went

back with him. There was four or five feet of water in the basement. Butler testified that he smelled no gas. He had gone to the foot of the steps and instructed O'Leary about connecting the pump to one of the furnace pipes. It appears Nelson, the cashier, was there with him. O'Leary again returned to the shop and came back with the deceased Young as a helper. He had never been in the basement before that morning, and, so far as he knew, neither had Young. The entrance was through the bank's office. He went there, he testified, for no purpose other than to pump out the water. O'Leary further testified that no one suggested the presence of danger or of gas, but when he went into the basement on his first trip he smelled a faint odor of gas. After putting up a temporary scaffold and getting back on the furnace boiler to work, the fumes were stronger. He related that his knowledge as a plumber was that where there is an odor there is gas, but not necessarily enough to explode, and sometimes there may be an odor after the gas is gone. While he was on the boiler preparing a connection for the pump, and Young was about the stairway, there was a sudden explosion, and flames spread quickly over the surface of the water. He jumped in and swam under the water to the steps and got out, but suffered such burns as kept him in the hospital for two weeks. Young was so severely burned that he died two days later. O'Leary testified that neither he nor Young had a light and had not struck a match. He could not account for the explosion. There was an electric light burning over the furnace, and a pump on the floor of the basement had been operated by electricity, but it had drowned out. The open grating, which had afforded ventilation, had been covered over with cement three days before the explosion, and there was no opening in the basement except two small places in the division wall opening under the floor of the adjoining building.

The same substance was on the water after the fire as was there on May 21. An engineer stated that it had the odor of naphtha. Two open pipes were found protruding through the basement wall about three feet above the floor, and some of this substance was in one of them. A cloth saturated with it freely ignited from a match flame held an inch away, and it proved to be very combustible. The source of these two pipes was

a large metal tank buried in the adjoining lot. It contained what was described as water and gasoline mixed. An explanation was offered that when the water seeping into the basement rose to the level of the pipe, it flowed into the tank, and when it reached the same level, the substance flowed back onto the surface of the water in the basement. It is said in the brief for appellant that many years before this tank and piping had been used as a part of an acetylene gas lighting system.

The trial court peremptorily instructed the jury to return a verdict for the defendant on the conception that it had done what the ordinary person would have done under the circumstances, namely, sent for the plumber and notified the gas company, and then, when it appeared the escape of gas had not been stopped by them, it again performed the same duty of exercising ordinary care by calling the plumber; furthermore, that the proprietor of the plumbing establishment and his man O'Leary, put in charge of the job, had detected the odor of gas and thereby acquired knowledge of a dangerous condition. But the evidence is that the proprietor did not detect any fumes that morning, and had not been sent for on account of the fumes.

Although not directly employed by the owner of the premises, one who enters on them by virtue of his employment to do work which his employer has contracted to do has the status of an invitee. Wells v. W. G. Duncan Coal Co., 157 Ky. 196, 162 S. W. 821; Lincoln v. Appalachian Corporation of Louisiana, 146 La. 23, 83 So. 364, 7 A. L. R. 1697; 45 C. J. 818. It was so held in the case of a servant of a plumbing contractor in Graham v. J. G. Brandt Shoe Co., 165 Mo. App. 361, 147 S. W. 165. The duty owing by an owner or person in possession to those who come on the premises by invitation, express or implied, is not to insure his safety, but it is to use ordinary care to have the premises in a reasonably safe condition. He must exercise a protective vigilance to see that his invitees are not led into a trap or dangerous condition known, or which ought to have been known, to him, but hidden from the other or so concealed that he could not observe it in the exercise of ordinary care for his own safety. Wells v. W. G. Duncan Coal Co., supra. Compare Branham's Adm'r v. Buckley, 158 Ky. 848, 166 S. W. 618, Ann. Cas. 1915D, 861.

It cannot be said the bank led the deceased into a danger which it knew or should have known and of which he was innocent. The plumber and his helper came to take out the water with the substance floating on it. Whatever risk there was incident to that work was incurred by him. The owner owed no duty to warn him of such a risk. The workman was chargeable in law with an appreciation of whatever danger there was present. Standard Oil Co. v. Titus, 187 Ky. 560, 219 S. W. 1077; Lexington & Eastern Ry. Co. v. White, 182 Ky. 267, 206 S. W. 467.

The court is of the opinion the peremptory instruction was proper.

Judgment affirmed.