## Hotel Operating Co. v. Saunders' Adm'r et al.

May 31, 1940.

Eugene Hubbard, Judge.

Trabue, Doolan, Helm & Stites, Harris W. Coleman and Watson Clay for appellant.

Morris & Garlove and Charles W. Morris for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

George W. Saunders, an expert electrician and elevator repairman, was electrocuted on Aug. 3, 1937, while inspecting appellant's elevator. He was an employee of the American Elevator & Machine Company, which will hereinafter be referred to as the company, and the fatal accident occurred while he was attempting to ascertain what supplies were necessary for the company to order in complying with its contract with appellant to repair its elevator. Saunders' administrator recovered judgment for $12,500 in this action and appellant assigns five reasons for reversal, one of which is that the trial judge should have directed a verdict in its favor. We have concluded appellant was entitled to a directed verdict, therefore it will be unnecessary to consider the other alleged errors.

Henry R. Wrocklage, an elevator inspector for the city of Louisville, inspected this elevator on July 27, 1937, and on that day addressed a letter to appellant enumerating in separate paragraphs, and by number,

eleven defects which he found in the elevator. We quote from that letter the first paragraph; item No. 10 of the list of repairs; and the last paragraph; as being pertinent to a decision of this cause:

"This Department made an inspection of your electric passenger elevator, and are recommending the following items to be repaired on elevator, so same will be in safe running condition and also pass the approval of this office:  *  *  *

"10. Have all wiring put in first class condition and free from grounds. Have conduit for said wiring properly grounded.  *  *  *

"We trust you will cooperate with us and have the above repairs made within the next five days, as this elevator is in a *very dangerous condition.* (Our italics.) If the repairs are not taken care of in the time mentioned above, it will be necessary for us to condemn elevator and same cannot be used until the above recommendations have been made."

Appellant made three copies of this letter, mailing one to the company and the other copies were mailed to two other elevator concerns, requesting bids for the repairs specified in the letter. We quote the following from the company's letter addressed to the appellant on July 29th:

"We are pleased to quote you on the following repairs to your electric passenger elevator:  *  *  *

"No. 10. We will check over all wiring, clear up any grounds and will provide the proper grounding of all conduit in accordance with code.  *  *  *

"We will furnish all material and labor and make repairs as enumerated in the above items during the regular working hours of the trade for the sum of $394."

Appellant accepted the company's bid with the understanding it would start work without delay.

On the morning of Aug. 3, 1937, two employees of the company, Saunders and F. E. Hayden, a graduate of electrical engineering, went to the hotel. Without notifying anyone in authority at the hotel of their presence or business, they went directly to the elevator. They informed the colored boy operating the car who they

were and their mission, and directed him to run the car while Saunders was on top of it inspecting the hatch and machinery. Peters, the operator, took the car to the top and brought it down and then at the direction of Hayden or Saunders, took it back up and stopped a little below the top floor. Saunders took hold of the conduit which was not grounded and he was electrocuted.

The petition alleged appellant carelessly maintained this elevator by not grounding, insulating and protecting the wiring and left them in a dangerous condition, which fact was known to appellant and was unknown to decedent and could not have been discovered by him in the exercise of ordinary care. The answer as amended after traversing the petition, affirmatively pleaded contributory negligence and assumption of risk on the part of Saunders; that it was customary for workmen to notify some person in authority when they entered a building such as appellant's before starting repairs, and that Saunders failed to notify any of appellant's officers or persons in charge that he had entered the premises for repair work. Issues were joined by a reply and an order controverting of record.

The evidence for appellee shows that when Wrocklage inspected this elevator on July 27th, he was on top of the car and found an ungrounded conduit which was without clamps or ground straps, and the conduit was out of the switch box on two or three different floors, and there was a short circuit in it; all of which was visible to the naked eye and to an electrician meant it was a "live wire"; that item No. 10 of his letter, "Have conduit for said wiring properly grounded," meant to put these ground straps on and ground the whole circuit; that a man with a knowledge of electricity would look around for such defects and could ascertain them.

In passing upon appellant's motion for a directed verdict, we will not question the competency of the testimony of appellee's witnesses, Zinner, Hoffman, Shelton and Schoenbaechler, who testified the elevator was in a dangerous condition and that they notified appellant to that effect before Saunders' fatal accident. These and several other witnesses for appellee testified that the dangerous condition in the elevator hatch was not apparent and Saunders could not have discovered it

while he was on top of the car. But there is no escape from the fact that the letter written by Wrocklage to appellant, which it forwarded to the company, Saunders' employer, warned the company that this elevator was in a "very dangerous condition"; and item No. 10 of that letter notified it the wires must be put in first class condition and the "conduit of said wiring properly grounded." This written, formal notice to the company was notice to its employee, Saunders, whose duty it was to make the repairs and to eliminate the danger. It is difficult to conceive how appellant could have given a more cogent notice or warning to Saunders of the dangerous condition which existed in this elevator hatch than by calling his attention thereto in writing. There is no testimony in the record that appellant was notified Saunders and Hayden had entered the hotel to inspect or work upon the elevator. On the contrary, Hayden testified explicitly that appellant and none of its officers or employees in authority on the premises were given any notice of his and Saunders' presence. Therefore appellant had no opportunity to warn Saunders of the danger on the day he started work.

While not directly employed by appellant, Saunders was an invitee on the premises by reason of being an employee of the company who had the contract to repair the elevator, hence appellant did not insure Saunders' safety, but it owed him the duty to have the premises in a reasonably safe condition. We take the following excerpt from Young's Adm'r v. Farmers & Depositors Bank, 267 Ky. 845, 103 S. W. (2d) 667, 669:

> "He must exercise a protective vigilance to see that his invitees are not led into a trap or dangerous condition known, or which ought to have been known, to him, but hidden from the other or so concealed that he could not observe it in the exercise of ordinary care for his own safety."

In Owens v. Clary, 256 Ky. 44, 75 S. W. (2d) 536, 537, the rule is thus stated:

> "The owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or ought to know of. But if the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty

of the owner to warn the contractor, and if he does not do this he is liable for resultant injury. The same rule applies to the servants of the contractor, and to the subcontractor and his servants.''

We have considerable doubt that the dangerous condition of this elevator was latent or concealed from an expert mechanic and electrician such as Saunders with 14 years' experience, but conceding that it was, yet when appellant notified him through a letter addressed to his employer of the *very dangerous condition* of this elevator, and notified him that the wiring and conduit were to be grounded, this was all the notice Saunders was entitled to or could expect. After such a warning Saunders was charged in law with knowledge of the danger incident to the work he was undertaking and assumed the risk incident thereto. We are unable to distinguish the instant case from Cumberland Telephone & Telegraph Co. v. Magness' Adm'x, 156 Ky. 330, 160 S. W. 1061, 1064. There, a ''trouble-shooter'' was electrocuted when sent to remove a ''live wire'' from a telephone, and the court held he must have known the ''live wire'' was connected with the telephone and he assumed the risk in repairing it. It was written there:

''Here the very business of the deceased as trouble man imposed on him the duty of inspection and examination. He had no right to assume or believe that the wires at the place in question were properly insulated, because he knew that the very trouble he was sent to remedy was caused by the fact that the wires were not properly insulated.''

Appellant argues that the Magness and other such cognate cases cited by appellant are not controlling as they deal with the relation of master and servant. But it has been written many times that the doctrine of assumed risk is not based on contract alone, but independently of the relation of master and servant there may be assumption of risk of a known danger. Standard Oil Co. v. Titus, 187 Ky. 560, 219 S. W. 1077; Young's Adm'r v. Farmers & Depositors Bank, 267 Ky. 845, 103 S. W. (2d) 667, 669.

The judgment is reversed with directions that should there be another trial of the case, the court will direct a verdict in favor of the defendant, appellant, if there be no material change in the evidence.