**Theodore MAHONEY, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 3805.**

United States District Court
W. D. Kentucky,
at Louisville.

Jan. 29, 1960.

Charles B. Zirkle, Louisville, Ky., for plaintiff.

William B. Jones, U. S. Atty., James C. Jernigan, Asst. U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

This suit was filed June 12, 1959. The plaintiff, Theodore Mahoney, seeks to recover $7,669 for medical and hospital bills, lost time, and damages for pain and suffering, arising out of an accident which occurred on the mailing platform for trucks on the north side of the Post Office Building at Louisville at about 5 o'clock in the afternoon on October 24,

1958. Jurisdiction was claimed under Title 28, Section 1346(b), U.S.C.

The Government denied the material allegations of the complaint and plead, as complete and separate defenses, contributory negligence and assumed risk on the part of the plaintiff.

This being an action under the Federal Tort Claims Act, the case was tried to the Court without a jury on December 11, 1959. From the testimony heard at the trial, the Court makes the following findings of fact.

### Findings of Fact

■ 1. The plaintiff, Theodore Mahoney, was on October 24, 1958, and for some months prior thereto, employed by the Dennis Truck Lines at Louisville, Kentucky. On the occasion here involved he was engaged as a truck driver, hauling parcel post packages from Belknap Hardware Company's plant in Louisville to the mailing platform at the north side of the Post Office Building between Sixth and Seventh Streets in Louisville.

2. In accordance with the usual procedure, plaintiff's truck was backed so as to bring the rear of it up to the mailing platform, and in that position the floor of the truck's bed was approximately 15 inches higher than the surface of the platform. The body of plaintiff's truck was 6 feet, 3 inches from floor to ceiling and had no openings save two doors on the rear of the truck.

3. The mailing platform is an open shed 20 feet wide, the roof of which is supported by iron stanchions located about 5 feet from the north edge of the platform and spaced at intervals approximately 16 feet apart.

4. The parcel post packages to be unloaded by plaintiff, insofar as here involved, were loaded into a dolly or hamper owned by Belknap, which was 43 inches long, 30 inches wide, and 41 inches high and was equipped with wheels so that it could be pushed or pulled. On the occasion of the accident, its weight with contents was estimated at 2,000 pounds.

5. For assistance in unloading trucks at the mailing platform, the Post Office Department supplies a metal piece of equipment 5 feet long and 4 feet wide called a dock board. One end of the dock board is securely fastened to the rear of the truck to be unloaded and the other end rested on the mailing platform to provide a means of rolling a dolly or hamper from the truck bed onto the platform.

6. After backing his truck up to the mailing platform, Mahoney got out of the cab, proceeded onto the platform, opened the rear doors of the truck, procured the dock board, placed it at the rear of his truck, and proceeded into the bed of the truck to bring out the hamper in which the packages to be mailed were packed. Mahoney stated that prior to his going into the truck there was no mail truck at or near the rear of his truck and no activity on the mailing platform in the vicinity where his truck was parked, except Earl Ray, a Post Office employee, was engaged in taking mail bags from platform trucks and placing them upon a conveyor belt. One end of the conveyor belt was resting on the inside of a Post Office semi-trailer and the other end extended southwestwardly from the rear of the semi-trailer at an angle of about 45 degrees.

7. Earl Ray, the postal employee engaged in loading the mail bags onto the conveyor belt, stated that when he unloaded a platform truck he pushed it out of his way toward the west, but that he at no time pushed one of the trucks and then let it roll to a standstill. However, Mahoney stated that, before entering his truck, he ascertained there were no trucks or obstructions at the rear of his truck and that he was inside the truck only from three to five seconds, during which time he unfastened a rope placed across the bed of the truck to prevent loaded hampers from running back against the doors. He then pulled the loaded hamper onto the dock board and proceeded from the rear of the truck to the mailing platform, walking backwards to prevent the hamper from going

down the dock board too fast; about the time he reached the mailing platform, an empty platform truck struck the side of his leg, causing him to fall over the platform truck and break his left arm.

8. Mahoney was assisted to an office near the mailing platform where he reported the accident and injury. He was then taken to Sts. Mary & Elizabeth Hospital where x-ray pictures were made and his broken arm was set. His broken arm healed without any unusual incident and he lost eight weeks from work, after which interval of time he returned to his work. His expense for medical treatment at Sts. Mary & Elizabeth Hospital and by Dr. Goldberg, who attended him after he left the hospital, was $120 and his bill at the hospital was $49, making a total of $169 for medical and hospital expenses. At the time he was injured, Mahoney's average weekly earnings were $101.60; during the eight weeks he was unable to work because of his injury, he would have earned an aggregate amount of $812.80.

9. Charles Ramsey was foreman in charge of the mailing platform on the occasion of the accident. He testified that he was about 30 feet from Mahoney when the accident occurred but that he did not observe him until he was in the act of falling over the bed of the empty platform truck. Ramsey did not see Earl Ray push the empty truck toward the scene of the accident and the truck was not in motion when he saw Mahoney in the act of falling over it.

There was no testimony that any persons other than Earl Ray and Charles Ramsey were at or near the scene of the accident or witnessed it.

10. It is a reasonable inference from the testimony that, while the plaintiff Mahoney was in the act of bringing the dolly or hamper loaded with parcel post packages from the bed of his truck to the mailing platform, the empty platform truck was pushed by Earl Ray to a point at or near the south end of the dock board extending from the rear of Mahoney's truck. This created a dangerous condition unknown to Mahoney, which

was the proximate cause of his fall and his injuries sustained in the fall. Mahoney was neither contributorily negligent nor did he assume the risk by unloading the hamper from his truck in the manner above detailed, that is, by pulling the hamper onto the dock board and proceeding in front rather than in the rear of the hamper as it descended to the mailing platform on its own wheels.

Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter. Title 28, Section 1346(b), U.S.C.

2. The liability of the defendant in this case must be determined by the law of the State of Kentucky; the Federal Tort Claims Act so provides. In Young's Adm'r v. Farmers & Depositors Bank, 267 Ky. 845, 103 S.W.2d 667, the court stated that one not directly employed by the owner of the premises but entering on them by virtue of his employment to do work for his employer has the status of an invitee. In the case of Shoffner v. Pilkerton, 292 Ky. 407, 166 S.W.2d 870, the court held that the duty owed to an invitee is that of exercising reasonable care and prudence to see that the premises are in reasonably safe condition. The plaintiff here was an invitee on the occasion of the accident and his resulting injury, and it was the duty of defendant's employees in charge of the mailing platform at the Post Office to keep and maintain the platform in a reasonably safe condition for the safety of all persons who might come there to unload their trucks and deposit mailing matter for handling by postal authorities. Pearson v. United States, D.C., 177 F.Supp. 934, a case involving a Government office.

3. The defendant relies upon the case of Carson v. John R. Thompson Co., D.C., 111 F.Supp. 889, involving a fall in Thompson's Restaurant in Louisville. The plaintiff there alleged that she fell on greasy or slippery foreign matter on the floor. This Court denied recovery on the ground that there was no evidence showing the presence of the alleged sub-

stance on the floor for a sufficient length of time prior to her fall to warrant an inference that the restaurant keeper did or should have discovered the dangerous condition of the floor. That doctrine is not applicable here, because in this case it is reasonable to infer that the dangerous condition was created by an employee of the Government in placing or pushing the empty platform truck against the plaintiff or into his path—an act of negligence for which the defendant is responsible.

## Conclusion

The Court concludes that the plaintiff, Theodore Mahoney, is entitled to recover for medical and hospital expenses the sum of $169, for time lost from his work the sum of $812.80 (eight weeks at $101.60 per week) and for pain and suffering the sum of $500, making a total sum of $1,481.80. Counsel for plaintiff will submit a judgment for that amount, upon notice to opposing counsel in accordance with the appropriate rule of this Court.