## Louisville & Nashville Railroad Company v. Newland.

(Decided June 8, 1917.)

### Appeal from Lee Circuit Court.

1.  Master and Servant—Independent Contractor.—The rule is that one who contracts to do a specific piece of work, furnishing his own assistants, and executing the work entirely in accordance with his own ideas, or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter in respect to the details of the work, is an independent contractor, and not a servant. On the other hand, the relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, "not only what shall be done, but how it shall be done."

2.  Master and Servant—Independent Contractor—Sufficiency of Evidence.—A contractor, who had theretofore been engaged in drilling blast holes for a railroad company, was employed by the company to blast the holes under a contract by which the company agreed to furnish the materials and appliances for blasting, and the contractor agreed to furnish his own assistant and do the work for $5.00 a hole. While plaintiff and his assistant testify that plaintiff was subject to the directions of the resident engineer of the company, who told him exactly how to do the work, yet, when asked to tell what these directions were, plaintiff says that the resident engineer

told him "to put in so many sticks of dynamite for the first spring and so many for the second and so many for the third and so on," and then "to shoot them;" and his nephew says "He (the resident engineer) told us how many to put in, as I have stated before, and if he seen we wasn't doing it according to the way he wanted it done, that he had the right and the authority to stop us:" Held, that as the purpose of the work was not the mere firing of the shots, but the blasting of the holes with charges of dynamite sufficient to change the physical condition of the fill so as to prevent it from slipping, the directions given to plaintiff were mere specifications intended to accomplish a particular result; and, as neither the giving of the directions nor the fact that the company reserved the right to end the contract if the work was not done according to the directions, tended to show that it reserved any control over plaintiff as to the manner of doing the work, the evidence that plaintiff was a servant of the company was insufficient to take the case to the jury.

Master and Servant—Independent Contractor—Personal Injury—Duty of Employer to Warn.—An employer is under no duty to an independent contractor to warn him of the danger incident to blasting.

4. Master and Servant—Independent Contractor—Personal Injury—Unsafe Appliances—Proximate Cause—Contributory Negligence.—An employer who agrees to furnish an independent contractor with appliances and materials to be used in blasting is not liable for personal injuries received by him because it furnished frozen dynamite, or directed him to make and use an iron loading pole, where the accident was not due to any defect in such appliances, but was caused by the negligent manner of their use by the contractor.

BENJAMIN D. WARFIELD, WALLACE & HARRISS, SAMUEL M. WILSON, G. W. GOURLEY and SAM HURST for appellant.

O'REAR & WILLIAMS and J. M. McDANIEL for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming on the cross-appeal and reversing on the original appeal.

Plaintiff, J. H. Newland, who was severely injured while engaged in blasting work for the defendant, Louisville & Nashville Railroad Company, brought this suit against the defendant to recover damages. The first trial resulted in a verdict in his favor for $20,000.00. A new trial was granted, and on the second trial he recovered a verdict for $15,000.00. Judgment was entered on the second verdict, and the defendant appeals. From the action of the trial court in refusing to substitute the first verdict for the second verdict, plaintiff prosecutes a cross-appeal.

Plaintiff's case is predicated on the claim that he was an employe of defendant, and though he was inexperienced in the work of blasting, the defendant not only furnished him unsafe appliances with which to work, but failed to warn him of the danger incident to such work. In addition to denying the allegations of the petition, the company pleaded that plaintiff was an independent contractor. It further pleaded assumption of risk and contributory negligence.

The only question we deem it necessary to consider is whether the evidence that plaintiff was an employe of the company was sufficient to take the case to the jury.

Plaintiff's evidence is as follows: Plaintiff was a contractor engaged in drilling wells and blasting holes, and at the time of his injury was forty-eight years of age. Some time prior to the accident he had drilled for the defendant about one hundred and thirty blast holes, some of which he and his employes had blasted. On the occasion in question the defendant was engaged in construction work. At certain places the fills on its road bed sloped toward the Kentucky river. To prevent the fills from slipping it was necessary to blast. To this end blast holes were drilled to a depth of forty or fifty feet and the holes loaded with dynamite. Pursuant to contract, plaintiff had just drilled six holes, for which he received 75 cents per lineal foot. After these holes had been measured and accepted and plaintiff and his assistant were getting their drilling outfit ready to move, L. B. Applegate, defendant's resident engineer, approached plaintiff and asked him if he could not blast the holes. Plaintiff said that he had very little experience in blasting and did not care to undertake the work. Applegate inquired if he had not blasted some holes for the company on another part of the work after he had drilled them, and if the work had not been satisfactory. Plaintiff said that was true, but he had gotten two experienced men to do the work, and, not being able to get them then, he did not care, because of his lack of experience, to undertake the work himself. Applegate then told him that the fill was slipping and that holes should be blasted at once, and if he did not care to undertake the work it would be necessary thereafter to employ someone who could do both the drilling and blasting. Applegate further told him that the company would furnish all the materials and appliances and pay him $5.00 a hole for doing the work. Thinking that he could get somebody to assist him in the

work of blasting, plaintiff agreed to undertake it. To load the holes it was necessary to have a long pole. Applegate suggested that plaintiff get a three-quarter inch pipe that was lying on the fill, put a wooden plug three or four feet long in each end of it, and tie a rope to the upper end so that the pole could be lowered and raised in the hole. Plaintiff made the loading pole in accordance with these directions. He then tried to get a man by the name of Wallace to do the work. Wallace wanted plaintiff to furnish a helper and pay him $3.00 a hole. Plaintiff was unwilling to furnish a helper and Wallace declined to do the work. Plaintiff and his nephew then proceeded to carry it out. To do the work the company furnished 60 per cent. dynamite, the kind ordinarily used in tunnel work, while the kind ordinarily used in blasting the holes which plaintiff was asked to blast was 40 per cent. At the same time Applegate told plaintiff that the 40 per cent. dynamite should be used just as the 60 per cent. dynamite. The dynamite which was furnished was frozen, and plaintiff says that Applegate told him that it was no more dangerous than thawed dynamite, in fact, it would hardly explode at all. The next morning they proceeded to work and Snedeker, the tunnel inspector, saw plaintiff using the iron loading pole. After loading one of the holes it was found that a part of the dynamite had lodged in the hole. He and his nephew then tried to push the dynamite down with the iron pole. Not succeeding in this, they raised the pole up about two feet and, still holding it with their hands, let it drop. In doing this they were using some force, but very little. After working in this manner for a few minutes the explosion occurred, as the pole went down the fourth or fifth time, and struck the dynamite.

As to the terms of the contract between plaintiff and defendant, plaintiff testified as follows:

"Q. Now what was said between you in your final contract as to what each was to do when he employed you to blow these holes? Counsel for defendant: Judge, are you talking about Snedeker or Applegate now? Counsel for plaintiff: Applegate. A. Well, it was agreed that Snedeker or Applegate would furnish the dynamite and the exploders and lead wire and battery and a pole and everything that was necessary to shoot those holes, and I was to furnish the work, perform the work and shoot the holes for five dollars a hole. Q. Were you, under that agreement with him of employment to furnish

anything except your labor? A. I wasn't to furnish anything but the labor necessary to perform the work. Q. Who was to direct as to the manner of loading and the amount of dynamite and so forth, that was to be used in those holes? Defendants: We object, that is a conclusion. Q. Well, what was said about it? Court: Let the witness state what was said between him and Mr. Applegate about those matters, to which defendant excepts. A. Mr. Applegate went on at that time, to give directions about how to do it—how much dynamite to put in the hole and how to shoot it, saying that he wanted it shot hard, and told how much it would take to shoot it hard, or as hard as he wanted it shot—told us to put in, use something—six—I believe about ten sticks the first spring and then follow that with about thirty sticks for the second spring, and to connect the holes all up together so that they could be shot at one explosion, shoot all six of the holes at one time.''

On cross-examination plaintiff testified as follows:

''Q. What was said, if anything, when you made the contract with Mr. Applegate, about any supervision or direction over the work? A. I don't remember just what was said. Q. Was anything? A. I don't know that there was except he directed me how to do it, is all I know. Q. Now when he directed you how to do it, what did he tell you to do? A. Well, he told me how to load the holes and how to shoot them. Q. Well, what did he tell you? A. Well, he told me to put in so many sticks of dynamite for the first spring and so many for the second and so many for the third and so on. Q. What else did he tell you? A. He said to shoot them. Q. Is that all he said—to shoot them? A. Well, he said a good many things. I can't remember what all. Q. Now what directions did he give you as to loading the holes? A. Well, sir, to put a certain amount of dynamite into the first spring and a certain amount of dynamite in for the second spring, and a certain amount of dynamite in for the third and——. Q. Did he give you the amount? A. Yes, he gave me the amount to shoot. And then when I put same in each hole, to shoot them, and said to connect them all together. Q. Did he tell you how to load the holes other than how much dynamite to put in? A. Well, I don't know what other directions he could have given me. I don't know that he did. I don't remember of any other directions at this time. Q. Did he tell you that he would have to furnish you sixty per cent. dynamite? That he was going

to? A. Yes. Q. And you agreed with him that you would shoot the holes with sixty per cent. dynamite? A. Well, I agreed, yes, agreed to shoot the holes with sixty per cent. dynamite."

In addition to corroborating plaintiff on other phases of the case, plaintiff's nephew and helper, Joseph A. Newland, testified as follows:

"Q. Now in their discussion between them, what was said as to what control, the manner of loading and the manner of doing this work, if anything? Counsel for defendant: We object to that as manifestly leading question, suggesting in the question the point to be testified to. Objection overruled; defendant excepts. A. Mr. Applegate was to be, or he was to control this work. He was to be the overseer and the general manager of this work. Counsel for defendant: We object to the witness' answer and move to exclude it, your Honor. Court: On what ground? Counsel: On the ground that is not responsive to anything that was said; it is simply his conclusion as to what passed between these men. Motion sustained. You can tell what Mr. Applegate said about the matter, to which plaintiff excepts. Q. Now go ahead and tell what he said about that matter of controlling him? A. Well, he said that he would have the right to stop us from loading and shooting at any time he seen it necessary. He told us how many to put in, as I have stated before, and if he seen we wasn't doing it according to the way that he wanted it done, that he had the right and the authority to stop us."

The rule is that one who contracts to do a specific piece of work, furnishing his own assistants, and executing the work entirely in accordance with his own ideas, or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter in respect to the details of the work, is an independent contractor, and not a servant. See v. Leidecker, 152 Ky. 724, 154 S. W. 10. On the other hand, the relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, "not only what shall be done, but how it shall be done." Singer Mfg. Co. v. Rahn, 132 U. S. 518, 33 L. Ed. 440; Williams v. National Cash Register Co., 157 Ky. 836, 164 S. W. 112.

Here plaintiff was engaged in the business of a contractor. It is conceded that in drilling the holes he was an independent contractor, but insisted that when he undertook the work of blasting he became a servant of the defendant. While it is true that plaintiff and his nephew say that plaintiff was subject to the directions of Applegate, who told him exactly how to do the work, yet, when asked to tell what these directions were, plaintiff said that Applegate told him "to put in so many sticks of dynamite for the first spring and so many for the second and so many for the third, and so on," and then, "to shoot them"; and his nephew said, "He (Applegate) told us how many to put in, as I have stated before, and if he seen we wasn't doing it according to the way that he wanted it done, that he had the right and the authority to stop us." In other words, Applegate merely specified the extent of the charge to be used in blasting. The purpose of the work was to change the physical condition of the fill so as to prevent it from slipping. Hence, the mere firing of the shots was not the object sought by the company, but the blasting of the holes with charges of dynamite sufficient to prove effective for the purpose intended. Every contract reserves to the employer the right to see that the contract is performed according to the specifications. The relation of master and servant is not inferable from the reservation of powers which do not deprive the contractor of his right to do the work according to his own initiative so long as he does it in accordance with the contract. 14 R. C. L., section 4, page 68. Here the directions with reference to the particular "springs" and the amount of dynamite to be used in each "spring" were mere specifications intended to accomplish a particular result, and the fact that the company reserved the right to end the contract if the work was not done according to the specifications, does not tend to show that it reserved any control over plaintiff as to the manner of doing the work. The only control reserved was the right to demand that the plaintiff should fire only such blasts as were prepared in accordance with the directions which constituted a part of the contract. Upon this showing the court concludes that the evidence tending to show that plaintiff was a servant of the defendant was insufficient to take the case to the jury, and that the trial court should have held, as a matter of law, that he was an independent contractor. Under these circumstances, the defendant was under no duty to warn plaintiff of the

danger incident to the work, nor can it be held liable because it furnished frozen dynamite, or directed the making and use of the iron loading pole, since the accident was not due to any defect in either, but was caused by the negligent manner in which plaintiff made use of such appliances. It follows that the peremptory instruction asked for by the defendant should have been given, and that the trial court did not err in setting aside the first verdict.

Wherefore, the judgment is affirmed on the cross-appeal and reversed on the original appeal and cause remanded for a new trial consistent with this opinion.

Whole court sitting.