## Mattingly's Administrator v. Hines, Director General, et al.

(Decided June 24, 1921.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1. Master and Servant—Safe Place to Work.—No duty devolves upon a contractee to furnish the employes of an independent contracttor a safe place to work.

2. Master and Servant—Lookout Duty—Independent Contractor.— Where an overhead crane is operated on a track elevated twelve feet from the ground, and the crane operator had no notice that the employes of an independent contractor that worked on the ground had placed a ladder against the framework, upon which the elevated track rested, in such way that the crane in passing that point would collide with the top of the ladder, no lookout duty was required of him.

3. Master and Servant—Lookout Duty.—A lookout duty or warning is only required of a contractee where he knows of, or has notice of, the danger to an employe of the independent contractor.

EDWARD J. McDERMOTT and GARDNER K. BYARS for appellant.

B. D. WARFIELD and TRABUE, DOOLAN, HELM & TRABUE, for appellees.

Opinion of the Court by Turner, Commissioner—
Affirming.

Robert A. Mattingly in July, 1918, was a carpenter in the city of Louisville and employed by the Alfred Struck Co., contractors.

At that time the Alfred Struck Co., under contract with the Louisville & Nashville Railroad Co., was doing certain reconstruction work at its extensive railroad shops in Louisville, the same having been necessitated by a fire.

At one place in the yards, and at a point where part of this reconstruction work was going on, the railroad company operated an overhead, traveling crane for some distance, running north and south. The crane was operated by electricity, and ran on an overhead track, supported by steel columns, the track being about 12 feet from the ground. The frame-work of the crane stood several feet above the track upon which the crane ran, and on top of this frame-work was a small motor, and from that were hung chains for the purpose of lifting heavy materials on the ground. On the east side of the crane was a small cab, a few feet square, attached to the frame-work of the crane, and there the operator sat while controlling the movement of the crane by electricity. This cab is a part of and attached to the crane but swings about three feet below the bottom of it, and being about six feet high, the top of the cab is about three feet above the bottom of the crane.

In the course of the reconstruction work undertaken by the Alfred Struck Co. it was necessary to make an excavation near one of the steel columns supporting the track upon which the elevated crane ran, and, in doing so, to remove or weaken the foundation of one of the columns supporting the crane track, and before removing the same it was thought advisable to place temporary supports in place of the one to be removed. With this end in view, Gaum, the foreman for the Struck Company, directed Mattingly and Walker, another employe, to place a ladder in the pit or excavation and up against the frame-work upon which the crane operated, so that one of the workmen could go up the ladder and see that the top of the temporary support was placed at that end in the proper position. Mattingly and Walker placed the ladder as directed, and then Walker was ordered to go up to the top of it and see whether there was any interference there with the running of the crane. Walker went up as

directed and reported back to Gaum, in the presence of Mattingly, that it was safe at the top and in the clear of the crane.    When Walker returned Mattingly, under directions from the foreman, went up the ladder for about four or five rungs, and his head was then some three or four feet lower than the track upon which the crane operated and that much lower than the top of the ladder.

While Mattingly was in that position, and facing east, looking to the proper placing of the top of the temporary support, the crane passed on the track and struck the top of the ladder, knocking it and Mattingly down, and in the fall he received such injuries as resulted in his death.

This is an action by Mattingly's administrator against the Director General of Railroads and the Louisville & Nashville Railroad Co. for damages, and upon a trial, after the plaintiff's testimony had been taken, the trial court gave a peremptory instruction to find for the defendants, and the plaintiff, complaining of that action, has appealed.

It is somewhat difficult from the record to understand the exact nature of the frame-work upon which the overhead crane was operated, it appearing that there were some temporary maps or drawings used on the trial in the circuit court which are not in this record.

The plaintiff's evidence showed, in substance, what we have already stated, and that the movement of the overhead crane was almost continuous, and that it moved up and down the track many times a day, some days more often than others, and that it moved slowly, about as fast as a man walks.   It further showed that the ladder, at the point where it was knocked down, had been placed there only four or five minutes when the accident occurred, and that it was the first time the ladder had been placed in that position.

The evidence further showed that the crane operator was an employe of the Louisville & Nashville Railroad Co., and that that company was operating the crane, although the reconstruction work was wholly under the control of the Alfred Struck Co.   It further showed that when the crane operator was in his cab or cage, and operating the crane, he could have seen the workmen on the ground under him and could have seen the foot of the ladder, but there is no evidence that the craneman was given any notice that the ladder was placed as it was, and there is no evidence that he could have seen from his position, or did see, that any one was up on the ladder.

The cage or cab was on the eastern side of the crane, while the ladder was placed against the western side of the frame-work upon which the crane ran; and the view of the operator, of one standing up on the ladder, was obstructed, at least partially, by the frame-work of the crane, by the steel columns, and by the "I" beams at the top of the supporting columns, such beams being about two feet in depth. There is no evidence, as stated. that the crane operator had any notice of the position of the ladder, or that anybody was on the ladder; and there is no evidence that he saw Mattingly on the ladder, and there is no evidence from which it might be inferred that he could tell from his position in the cage that the ladder rested at its top in such a way against the frame-work as would cause a collision with the crane.

We gather from the evidence that the head of the crane operator, when in his cage and operating the crane, is about on a level with the tracks, and even if he saw the ladder placed against the frame-work, and even if he saw Mattingly on the ladder, he was in no such position as to be able to see that the ladder was so placed as that the operation of the crane would knock it down or interfere with it.

It appears from the evidence that Walker reported to his foreman in the presence of Mattingly that the ladder was so placed at the top that the operation of the crane would not interfere with it, and that he went to the top of the ladder for the purpose of passing upon that very question. And surely if it appeared to one who was especially investigating that question that it was safe and in the clear, certainly it could not have been expected that the operator on the other side of the frame-work, some 35 or 40 feet away, could have told that it would be knocked down by the operation of the crane.

It is conceded that the Alfred Struck Co. was an independent contractor and that no duty devolved upon the railroad company to furnish the Struck Company's employes with a safe place to work. But we infer from appellant's brief that it is claimed a lookout duty was owed to the employes of the Struck Company. Clearly counsel is in error; in the first place, it appears that the crane was operated on an elevated track twelve feet from the ground, and it is not reasonable to suppose that under any ordinary conditions there would be persons upon such a track; and in the next place, it appears that the crane operator had no notice that Mattingly or any of

the Struck employes, were in a position of danger, or that the ladder was placed where it was or in such way as to cause a collision. A lookout duty or warning is only required of a contractce where he knows of dangers to the employes of the independent contractor, of which they have no notice. Wells v. Duncan Coal Co., 157 Ky. 196; L. & N. R. R. Co. v. Smith's Admr., 134 Ky. 47; L. & N. R. R. Co. v. Newland, 176 Ky. 166

The case of Bradas v. Henry Vogt Machine Co., 175 Ky. 803, is essentially different from the case at bar. In that case the operator of the crane had notice of the dangerous position of the workman and of where he was at work, and actually knew he was there, and that he was at work in dangerous proximity to the crane when it passed him; and it was therefore held that it was the duty of the crane operator to keep a lookout for the safety of Bradas upon every trip that he made past that point and to give him warning of the approach of the crane. In that case, the lookout duty devolved upon the crane-man because of his knowledge and because of notice that the workman was at work in a dangerous position when his crane passed that point; while, in this case, there is no evidence that the crane operator either knew or had notice of the fact, either that the ladder was placed against the frame-work, or that it was placed against it in such manner as to be dangerous, or that appellant or any other employe was on the ladder at the time. To the same effect is the case of L. & E. Ry. Co. v. White, 182 Ky. 267.

There is no question of concurrent negligence presented by the record; the only question is whether the crane operator was remiss in any duty which he owed to the employes of the independent contractor; and as we have seen he owed them no lookout duty and had no notice of the dangerous position in which the decedent's fellow employes had placed him, the lower court properly directed a verdict for the defendant.

Judgment affirmed.