## Commonwealth v. Hatfield Coal Company.

(Decided December 13, 1921.)

## Appeal from Kenton Circuit Court.

1. Monopolies—Trusts—Criminal Prosecutions.—On the trial of a corporation, in the business of mining and selling coal, indicted under Ky. Statutes, sec. 3915, for unlawfully entering into an alleged conspiracy, trust or combination with other corporations or persons, dealers, in coal, to fix the price of coal on the market, evidence that it from time to time issued and mailed to other corporations and persons, dealers in coal, and accustomed to purchase coal of it, printed circular letters giving changes in the market prices of coal handled by it, and stating when such changes in prices would go into effect, together with other information respecting the allowing of discounts to coal dealers and rebates to purchasing charitable institutions; and that certain of such coal dealers, after receiving such circulars, changed the market prices of coal handled by them for sale to the prices contained in the circulars, was not sufficient to establish the appellee's guilt under the indictment without other evidence conducing to prove that the changes in the prices of coal stated in the circulars were made in furtherance of the alleged conspiracy to control the coal market, which might be done by a showing that the changes in prices resulted from a previous agreement to control the market, or were made with such disregard of the laws of supply and demand and lower prices prevailing under similar conditions in other like coal markets, as reasonably would allow an inference of the existence of such agreement.

2. Monopolies—Trusts—Restraint of Trade—Circulars for Advertising Commercial Business.—The mere issuing of circulars by a corporation, company or individual for advertising a commercial business, whether by giving the prices at which its or his products are sold, or otherwise advancing its or his trade, is everywhere recognized as both necessary and legitimate; and the fact that other dealers in like commodities receiving such circulars change their prices to those contained in them will not of itself justify an inference that the circulars were issued in restraint of trade, or in furtherance of a conspiracy or combination between the sender and those in like business receiving them, to fix or control the market prices of the commodity advertised.

3. Monopolies—Indictment and Information—Circumstantial Evidence.—The guilt of the defendant tried under indictment for a violation of the statute, supra, may be established by circumstantial evidence, without formal proof of a conspiracy by agreement, but the circumstances relied on to establish the conspiracy or unlawful agreement, must be of such character as will be consistent with the hypothesis of guilt, and, beyond a reasonable doubt, exclude every other hypothesis but that of guilt.

4.   Criminal Law—When Defendant Entitled to an Acquittal—Peremp-
     tory Instruction.—Where the Commonwealth's evidence presents
     two states of fact, under one of which the defendant is guilty,
     and under the other he is not guilty, and the evidence fails to show
     which state of fact is true, he is entitled to an acquittal; and as
     such was the situation at the close of the Commonwealth's evi-
     dence in this case, the action of the trial court in peremptorily
     instructing the jury to return a verdict of not guilty was not
     error.

CHAS. I. DAWSON, Attorney General, T. B. McGREGOR, Assis-
tant Attorney General, and STEPHEN L. BLAKEY for appellant.

M. H. McCLEAN for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellee, Hatfield Coal Company, a corporation
engaged in the business of mining, shipping and selling
coal, and having its chief office in the city of Covington,
this state, was indicted in the Kenton circuit court by the
grand jury of Kenton county for willfully, unlawfully
and maliciously entering into a conspiracy, pool, trust,
confederation, combination and understanding with
divers other corporations and persons in Kenton county
to fix and control the price of coal on the market, the of-
fence charged being one denounced by section 3915, Ken-
tucky Statutes. On the calling of the case for trial the
appellee entered a plea of not guilty, and the Common-
wealth introduced its evidence, upon the conclusion of
which the jury, in obedience to a peremptory instruction
given by the trial court on the appellee's motion, re-
turned a verdict finding it not guilty. The Commonwealth
filed motion and grounds for a new trial, but the motion
was overruled, which resulted in the prosecution by it of
this appeal from the judgment entered in pursuance of
the verdict.

The single question presented for decision by the ap-
peal is, was there such a failure of proof of the appellee's
guilt in the Commonwealth's evidence as authorized the
giving by the court of the instruction peremptorily di-
recting its acquittal?

It appears from the evidence that the appellee is a
leading dealer in coal, perhaps the largest in Covington;
that it ships large quantities of coal from mines owned
by it to Covington and other places, which it sells from its
Covington office both by wholesale and retail, having
among its customers many coal dealers and individual

purchasers in that city, the contiguous territory and elsewhere; that it is, and for years has been, its custom to send out from time to time to other dealers in coal and the public generally, printed circulars containing price lists of the various qualities of coal sold by it, the discounts allowed on certain grades to dealers and other purchasers, and such other information as would indicate changes in prices of the coal handled by it, the time they would go into effect, together with other facts respecting the allowance of rebates to charitable institutions that were accustomed, or might wish, to purchase coal of it, and its manner and times of making deliveries of coal to purchasers.

The evidence showed that the appellee owned stock in at least two other coal companies or corporations to which the circular letters containing price lists, etc., were mailed, and that these companies and certain other dealers in coal of Covington, whose testimony appears in the bill of evidence, after receiving such price lists from appellee would change their prices to accord with same. Among other witnesses introduced by the Commonwealth was Charles Hunt, superintendent of the appellee coal company, who testified that for a great number of years it had used the circulars in question for the purpose of advising its agents, customers and the trade in general of the prices at which it sold its coal, and particularly of the changes in prices as made from time to time; that many of the dealers in coal to whom the circulars were sent were purchasers of large quantities of coal from it and uniformly received a discount of fifty cents per ton from the list prices therein quoted on such purchases, because they were dealers in coal. It cannot be said from the evidence that the changes in prices in coal fixed by the circulars issued by appellee were without respect to the law of supply and demand, or that they were higher than those that prevailed under similar conditions in other like markets.

It is conceded by counsel for the Commonwealth that its evidence furnished no direct proof of a conspiracy or agreement between appellee and other dealers in coal to fix the prices of the commodity, but insisted that it presents the facts and circumstances from which such conspiracy or agreement may be inferred, and that considered as a whole it was sufficient to take the case to the jury. But for the Commonwealth's introduction of Hunt, appellee's superintendent, as a witness, this con-

tention would have greater force, but the explanation given by him of the object and effect of the circulars regarding the prices of coal sent by appellee to other dealers and customers, puts upon the evidence as a whole a complexion that is not inconsistent with the hypothesis of its innocence.

Obviously, the issuing of circulars by a corporation, company or individual for advertising a commercial business, whether by giving the prices at which it sells its or his products or otherwise advancing its or his trade, is everywhere recognized as both necessary and legitimate, and the fact that other dealers in like commodities change their prices to conform to those stated in the circulars will not of itself justify an inference that the circulars were issued in restraint of trade, or in furtherance of a conspiracy or combination between the sender and others influenced by them, to fix or control the price of the commodity advertised. It cannot be said that the mere sending out of such circulars to other dealers or customers is an unlawful act. To make it so, therefore, it must be shown that it was done with a previous understanding between the sender and those receiving the circulars that the latter would be controlled by the prices therein stated and change their own prices to conform to same. Proof to this effect, and to the further effect that the changes in prices made by appellee's circulars were not justified by changes in market conditions, seems to be lacking in this case, and however salutary the object of the statute under which appellee was indicted or great the necessity of preventing illegal profiteering by its enforcement, one indicted thereunder should not be punished for its violation in the absence of such evidence as would conduce to prove beyond a reasonable doubt his guilt. This may of course be done by circumstantial evidence and without formal proof of a conspiracy by agreement, but the circumstances relied on to establish the conspiracy or unlawful agreement must be of such character as that the facts must be consistent with the hypothesis of guilt and, beyond a reasonable doubt, exclude every other hypothesis but that of guilt. Whorton on Evidence, sec. 876; Underhill on Crim. Evidence, sec. 6; Burrill on Circumstantial Evidence, p. 737; Sprouse v.Comth., 152 Ky. 269; 16 C. Juris, pp. 650-653; Rucker v. Comth, 171 Ky. 276.

Where, as in this case, the Commonwealth's evidence presents two states of fact, under one of which the defendant is guilty and under the other he is not guilty, and the evidence wholly fails to show which state of fact is true, he is entitled to an acquittal. Meredith v. Comth., 192 Ky. 177-8. Therefore the giving by the trial court of the instruction so directing the jury was not error.

Judgment affirmed.