## Knight, Knight & Clark v. McCoin et al.

(Decided June 12, 1934.)

JOHN A. MOORE for appellants.

J. R. WELLS, H. PATE WELLS, and CHARLES FERGUSON for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

While at work at a mine of Knight, Knight & Clark,

a partnership engaged in fluorspar mining, William F. McCoin fell into a mine shaft and sustained injuries from which he died immediately. The mine was being operated under the Workmen's Compensation Act (Ky. Stats. sec. 4880 et seq.) and McCoin had signed the register electing to work under that act. His widow made application to the compensation board for compensation. At a hearing had before the Honorable Ervine Turner, referee for the board, an order was made awarding the claimant compensation at a rate of $11 90 per week for a period of 335 weeks with interest on all past due payments at a rate of 6 per cent. per annum and the further sum of $75 as burial expenses for her deceased husband.

The defendants made a motion for a full board hearing of the matter which was granted and on such hearing the former award was fully sustained. An appeal to the Livingston circuit court resulted in judgment affirming and sustaining the award of the board in all particulars, and from that judgment this appeal is prosecuted.

It appears in evidence that appellants desired to locate and open up an old mining shaft on their property and made arrangements with McCoin and Albert Lezyski who were experienced miners to do the work. They were to clean out, recondition, and retimber the shaft for $4 per foot with a guarantee that each would receive a minimum wage of $3 per day and were to receive $7 per foot in the event it was extended further and it was necessary to drill and blast through rock. Appellants were to and did furnish all material, machinery, and supplies necessary for the prosecution of this work. It appears that these miners had been employed by the company in Kentucky for some months before the accident occurred.

A. D. Knight, one of the partners, testified that on the morning of the accident, his brother E. A. Knight, and A. C. Clark, the other partners, were not on the job and he was looking after the work, but there were only two small crews at different places in the mine about 1,600 feet apart and not much going on, so he went hunting. When he came back, he heard the hoister running where the shaft was being sunk and started down there. When he arrived, Lezynski, who was down the shaft, told him that McCoin had just fallen into the

shaft. He called others who went down into the shaft but McCoin was dead. He testified that he knew very little about the arrangements under which the work was being done as they were made by Mr. Clark. When asked if the workmen had a right to do the work on their own judgment as they saw fit, he replied, "Mr. Clark looked after that and they did the work under his suggestions."

Mr. Clark testified that under a contract, the workmen were employed to locate and clean out a shaft which had been sunk about 70 years ago and the only thing to indicate its location was a mound of rocks; that the workmen were directed to start in with the pick and shovel and endeavor to find the collar of the old shaft first; that they were to receive $4 per foot for cleaning out the shaft and retimbering and making it safe to work in and were guaranteed a minimum of $3 per day. At the time McCoin fell, he was operating a hoist at the mouth of the shaft. When asked whether the workmen were being directed as to the manner and means of doing the work or whether they were acting on their own judgment, he stated that there was no particular method other than pick and shovel in cleaning out the abandoned shaft; that when it came to timbering, they did the work under his instructions, but in cleaning out the earth and debris, no instructions were necessary. When asked whether or not for 30 days prior to the time of the accident, these miners were in full charge of the work, using such methods and means as they saw best to produce the results required under their contract of employment, he replied, "Not altogether but during that time after the shaft was collared up, we had to change method of hoisting, they started with a hand spindle that was operated by hand, after the depth of thirty feet that was too slow. That was under our supervision to put them in a power hoist." He stated that there was no definite understanding as to the depth the shaft was to go and that was a matter in the discretion of the employers.

Lezynski testified that at times they worked on their own judgment and some time under the directions and judgment of one of the three partners and especially Mr. Clark who was taking the lead where they were working; that he gave directions as to the size of the shaft and furnished the material; that Mr. Clark had a right to determine the depth of the shaft.

The evidence shows that the day following the death of McCoin, appellants made a report of the matter to the compensation board as is required of employers under the Workmen's Compensation Law.

It is argued by counsel for appellants that McCoin and Lezynski were independent contractors and since it is essential that the relation of master and servant exist to bring the case within the provisions of the Workmen's Compensation Law, appellee's claim for compensation thereunder must fail.

While the evidence establishes beyond question that deceased and his companions were experienced miners, chosen because their experience peculiarly fitted them for this work, and it was unnecessary to give them directions as to how the excavating should be done, it is equally well established that in prosecuting the work, they were under the directions and control of appellants; and that one or more of appellants were present at practically all times, supervising and directing the work. Appellants directed where the work should begin, the size of the opening that should be made, how the timbering was to be done, furnished all necessary material, equipment, and supplies, and had the right to stop the work at any time they desired. If, under the contract of employment, McCoin and Lezynski, in opening up the shaft, had a right to execute the work in accordance with plans previously given to them by appellants or could do the work entirely in accordance with their own ideas and were not subject to the orders of appellants with respect to the details of the work, then they were independent contractors and the relation of master and servant did not exist. See v. Leidecker, 152 Ky. 724, 154 S. W. 10; Louisville & N. R. Co. v. Newland, 176 Ky. 166, 195 S. W. 415; Raponi v. Consolidated Coal Co., 224 Ky. 167, 5 S. W. (2d) 1043.

On the other hand, if appellants retained the right to direct what work should be done and the way and manner in which it should be accomplished, the relation of master and servant did exist and McCoin and his associate were not independent contractors. Wright et al. v. Wilkins et al., 222 Ky. 144, 300 S. W. 342; Williams v. National Cash Register Co., 157 Ky. 836, 164 S. W. 112; American Bituminous Coal Co. v. Ponder, 228 Ky. 776, 15 S. W. (2d) 507.

The manner in which wages are paid, which is,

whether by the day or by the piece or quantity of work, is not conclusive but merely a fact to be considered in determining the relationship. Measured by the foregoing authorities, it is apparent that the decided weight of the evidence here clearly indicates the relation of master and servant.

Where the finding of the compensation board is sustained by substantial, competent evidence, it should not be disturbed on appeal. Fordson Coal Company v. Bledsoe, 236 Ky. 409, 33 S. W. (2d) 302; Mary Helen Coal Corporation v. Hooker, 237 Ky. 346, 35 S. W. (2d) 535; Kentucky & West Virginia Power Company v. Terry, 238 Ky. 187, 37 S. W. (2d) 36.

Since there is ample evidence to sustain the finding of the compensation board, the judgment is affirmed.